STATE v. DEAN.

No. 4296.   Decided March 12, 1927.   (254 P. 142.)

270

A. G. *Horn,* of Ogden, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *W. Hal. Farr,* Asst. Atty. Gen., for the State.

STRAUP, J.

The defendant was convicted of the crime of rape, and appeals. The crime was alleged and found to have been committed on a 10 year old girl. She resided with her parents, an older sister aged 16, and a younger sister 6 years of age. The defendant was a roomer and boarder at the home of the child's parents. The child testified to all the essentials constituting the offense. The defendant testified, denying all undue familiarities with the child. A day or two after the alleged commission of the offense, the child complained to its mother of soreness at the child's privates. The mother washed and bathed the parts. About a week thereafter, in washing and bathing the child, the mother discovered some gatherings or discharges. She talked with a woman neighbor about the condition. The mother took the child to a doctor, who on examination found it afflicted with gonorrhea. The mother then learned of the defendant's relation with the child, whereupon the defendant was charged with the offense, and was arrested. On being released on bail, the sheriff asked the defendant to go to the county physician and be examined. The defendant voluntarily went to the physician's office and consented to the examination. The physician testified he found him afflicted with "chronic

gonorrhea, of a very chronic nature, * * * a gonorrhea that had existed for along period of time, but in a very mild form; that is, most of the evidences of it had disappeared," but "there was a very slight amount of discharge, almost imperceptible, but a little bit, however, with a few active gonococci in it"; that gonorrhea was a disease "of the genital organs acquired practically always by or through intercourse"; and that the disease in the stage or condition found in the defendant was communicable to others. The physician was called by the state, and gave his testimony over the objections of the defendant. Complaint is made of this ruling.

The defendant claims that, by reason of our statute (Comp. Laws Utah 1917, § 7124, subd. 4), the witness was incompetent, and that the information acquired by him was privileged. The statute provides that a physician or surgeon cannot without the consent of his patient be examined in a civil action as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient. The complaint is unfounded because: (1) No relation of physician and patient was shown; (2) the information was not acquired in attending the defendant as a patient, nor to enable the physician to prescribe or act for him or to treat him, nor did the physician treat or undertake to treat him; (3) the action in which the physician was called to give testimony was a criminal and not a civil action. To overcome the last of the stated reasons, the defendant points to another statute (Comp. Laws Utah 1917, §§ 9275 and 9276), which provides that the rules determining the competency of witnesses and of evidence in civil actions are applicable to criminal actions, except as otherwise provided in the Code of Criminal Procedure. These sections do not help the defendant. Under the common law a physician called to testify as a witness was competent to disclose any information required by, or communicated to, him in the course of his attendance upon, or treatment of, his patient in a professional capacity, nor could the physician refuse to give, nor the patient by ob-

jection exclude, such testimony. Upon the conditions therein stated, the statute in civil actions renders the physician incompetent to give testimony, unless the consent of his patient is had. The common law as to the competency of a physician to give testimony is not otherwise restricted. The common law, except as otherwise modified by statute is in force in this state. California has the same statute (sections 1102 and 1321, Kerr's Cyc. Codes) corresponding with sections 9275 and 9276 of our statute. It likewise has a statute (C. Civ. P. § 1881) like ours, that a physician, without the consent of his patient, may not in a civil action give testimony, on conditions in the statute, which, so far as here involved, in all respects are like our statute. Under such statute the California court, in the cases of *People* v. *Lane,* 101 Cal. 513, 36 P. 16, and *People* v. *West,* 106 Cal. 89, 39 P. 207, has held that the rule as to privileged communications between a patient and physician does not apply in criminal cases, and that a physician or surgeon may be examined in a criminal action as to information acquired in attending patients, and that the rule as to such privileged communications applies only in civil actions. Adopting, as we do, such holdings no error was committed in permitting the physician to testify.

The complaint against the defendant was filed before a committing magistrate, D. R. Roberts, city judge of Ogden City. On motion of the defendant for a change of venue on alleged grounds of prejudice and bias of the city judge, the case was transferred to W. S. Smith, a justice at Huntsville, in the same county. On the day set for the preliminary hearing the defendant, who was at liberty on bail, and his counsel appeared before the justice, and filed what the justice denominated a "bill of objections," which he as he recited on the record, overruled. The filed objections were that the justice had not made any prior order fixing the time for the hearing and had given no notice of the hearing; that the justice was thus without jurisdiction to proceed; and that the defendant refused to submit to a hearing at that time or to participate in the proceedings; and that he

was not prepared to proceed "and keep his bond from being forfeited." No reasons were assigned why the defendant was not then prepared to go on. The justice's record further recites that the hearing was had, and that the defendant and his counsel were both present, and that on the evidence adduced the court found the defendant "guilty as charged in the complaint, and bound him over to the district court under a $5,000 bond." The information filed in the district court recited that the defendant had theretofore been duly committed by "D. R. Roberts," a committing magistrate, instead of W. S. Smith, the magistrate who committed the defendant. A motion was made to quash the information on all the grounds filed before the justice, and upon the further ground that the justice made no "finding as provided by law which permitted the filing of an information." No ground was stated that the information recited that the commitment was made by Roberts instead of Smith but that, too, is here urged. The motion was overruled. Complaint is made of that ruling. We do not see anything of substance to the points. The defendant being at large, and if the hearing was set without the knowledge of the defendant or his counsel, notice of the hearing ought to have been given. But the state could not go on without the defendant. His presence was essential to a valid hearing and binding over. If no day for the hearing was fixed when the defendant was released on bail, the defendant or his counsel, if neither had knowledge of the time or day the defendant was required to appear, before forfeiture of his appearance bond, was entitled to some kind of notice of the time the defendant was required to appear, unless he had absconded or concealed himself, or by other conduct prevented the giving of notice. But the defendant and his counsel were present at the hearing on the day and hour fixed for it. If for any good reason the defendant was not then prepared to go on, he ought to have made it known. He assigned no such reason. Not having done so, he may not thereafter complain of the hearing and binding over on the ground of want of prior notice.

The statute provides that, if from the examination it appears that a public offense has been committed, and sufficient cause to believe the defendant guilty thereof, the magistrate is required to indorse on the complaint an order to the effect that it appeared to the magistrate that the offense charged in the complaint was committed, and that there was sufficient cause to believe the defendant guilty thereof and to order him held to answer. The justice, in such respect, after reciting the substance of the complaint, recited that from the evidence produced he found the defendant guilty as charged, and bound him over to the district court. Because of such wording of the order it is claimed that no valid information could be filed in the cause. The claim is untenable. When the justice on the evidence adduced found the defendant "guilty as charged," he necessarily found there was probable or sufficient cause to believe the defendant guilty.

Since the defendant did not by his motion to quash or otherwise before verdict call attention to the court or to the district attorney that it was recited in the information that the defendant was committed by Roberts instead of Smith as the magistrate, we think defendant is not in position to press before us such an irregularity or amendable recital or averment. That the information did not sufficiently recite the fact of commitment or binding over of the defendant by a magistrate and as required by the statute is not claimed; and, since the substance of the statutory requirement in such respect is recited in the information, the misnomer of the magistrate is not of such material, much less fatal, concern to warrant or authorize the raising of the point for the first time after verdict or before an appellate tribunal.

In addition to the defendant's plea of not guilty, he also pleaded once in jeopardy. The court refused to submit such special plea to the jury. Complaint is made of that. The plea was based on the order of the committing magistrate holding the defendant to answer wherein it was recited that

circumstances under which the defendant became a roomer and boarder at his house, and that the witness did not get along very well with his family, including the priod the magistrate "found the defendant guilty as charged," and bound him over to the district court. There was nothing else adduced to support the plea. Of course, for obvious reasons, the preliminary hearing before the committing magistrate did not constitute once in jeopardy, no matter what order the magistrate may have made. Though such a plea was interposed, yet, if there was not anything either in law or in fact to support it, as there was not, it properly was withheld from the jury.

Complaint also is made of the court's refusal to charge as requested by the defendant. The substance of three of the requests relates to matters which could only be considered by the jury as affecting credibility of the complaining witness, the mother of the child, and the weight to be given her testimony. To that extent the requests were proper. But they went further. They stated that, as matter of law, such matters could be considered, and that the jury had the right to consider them, not only as affecting credibility and the weight of testimony, but also " as going to the merits of the charge," "as well as for any other purpose," and "for any and every purpose in the case." The subject embodied in the requests could not be considered for any such purpose, and thus the requests were properly refused. In other particulars there was either no evidence to support the refused requests or they did not state the law. The other request, of which complaint is made of its refusal, was not refused, but was given in substance, and the law in such respect stated as favorable to the defendant as was requested by him.

The defendant called the father of the child as a witness. He was living with his family at the time of, and prior and subsequent to, the alleged commission of the offense but not at the time of the trial. After testifying concerning his acquaintance with the defendant and the

in which it was alleged the offense was committed, he was asked by counsel for the defendant:

"Q. Now, Mr. Yocum, I will ask you if about the time this charge was made against Mr. Dean your daughter Naomi [the oldest daughter, not the daughter on whom the alleged offense was committed] was keeping company with any one, if so, with whom?"

The state objected to this on the ground that the inquiry was irrelevant and immaterial. The court sustained the objection. Then counsel for the defendant stated that he proposed to show by the witness and other witnesses that the oldest daughter was keeping company "during all this time with a man who was afflicted with a venereal disease such as has been testified to here by the doctors," and that the witness found stains upon her cloths which resembled discharges from a man, and that she was almost continuously in the company of such man, not only at her home, but at the place where he was working, "and we are going to ask the jury then to determine whether or not this disease was contracted through that channel instead of as the state claims here." The same objection was made to the offer, and was sustained. Then counsel for the defendant propounded to the witness this question:

"Q. During that time, Mr. Yocum, I will ask you to state whether your family, your wife and Naomi, as well as Clara Mae [the child on whom the alleged offense was committed], were afflicted with this gonorrhea."

The same objection was made by the state, and was sustained. Then counsel for defendant propounded this question to the witness:

"Q. I will ask you to state whether or not you contracted that disease from them."

The same objection was made to that, and was sustained. The witness then was examined as to other matters. At the conclusion of his testimony counsel for the defendant stated that he had two other witnesses, naming them, who

would "testify to the evidence that was offered by this witness and excluded. I simply want the record to show, and counsel can make his objection so as to save time, that these witnesses were called, and I made the offer to prove the same testimony by them that I offered to prove by Yocum." The same objection was made by the state and was sustained. These rulings present the principal, and a rather difficult, question for review.

Let it be assumed that, to corroborate the testimony of the child, the state, among other things, showed that the child and the defendant both were afflicted with gonorrhea. That the child had the disease was not disputed. The physician who examined the child so testified. That it contracted the disease because of and through the sexual offense alleged to have been committed by the defendant of course was claimed by the state. That it was relevant for the defendant to show that the child contracted the disease from or through another source or sources, or to show facts and circumstances from which such ultimate fact could fairly or reasonably be inferred, again may readily be conceded. The question thus is, Did the proffered evidence tend to prove such ultimate fact or a material link in the chain thereof? The first question propounded to the witness, whether his oldest daughter was keeping company with any one, had no such tendency. It may be said such question was merely preliminary. We thus look to what counsel for the defendant stated he proposed to show. The effect of the offer was that the oldest daughter was keeping company with a man who had gonorrhea, and with whom she had illicit relations, and from that counsel was going to ask the jury to determine whether the 10 year old girl, alleged to have been assaulted by the defendant, contracted the disease from or through such source or from the defendant. Evidence to be relevant or material, of course, must have some probative value, and in some degree must tend to prove what is claimed for it. Whether proffered evidence tends to do so or has such probative value, and thus is admissible, is, in the first in-

stance, a question for the court. It seems quite clear that what counsel stated he proposed to prove had no tendency to show that the child contracted the disease from such claimed source, and not from the defendant. Thus the objection to such question was well taken.

The rulings on the objections to the other questions propounded to the witness, whether or not the mother and oldest daughter and the assaulted child had gonorrhea, and whether the witness himself had contracted the disease from them, present a more serious question. The questions, however, as propounded, do not imply that the child had contracted the disease from the witness or his wife or from the oldest daughter, but whether the witness had contracted it "from them"; that is, from his wife, the oldest daughter, and from the assaulted daughter. If by the questions propounded counsel sought to show that the child contracted the disease from the father, the mother, or the oldest daughter, or from all of them, counsel nowhere disclosed in what manner nor under what circumstance it was claimed the child contracted it from such source, nor did he offer to connect up such testimony or prove other facts and circumstances from which it might be inferred that the child had contracted the disease from such source or sources. Counsel but offered to prove that the father, mother, and oldest daughter had the disease; and from that let the jury determine whether the child contracted the disease from such source or from the defendant. Had the state but proved that the defendant was a member of the family, and that both he and the child had the disease, such showing alone would not have proved anything. To make such condition or state of facts relevant and of probative value it also was necessary to show, which the state did, that it was fairly and reasonably probable that the disease was communicated or imparted to the child by the defendant, by showing, as was done, the sexual relation and penetration of the child's privates by the defendant, and that the disease generally, "practically always," was communicated or im-

parted by and through sexual intercourse or contact. We do not say counsel was required by any such direct evidence to show that the child could have and probably did contract the disease from the father, mother, or oldest daughter to make the proffered evidence relevant, but it was essential that some further facts or circumstances be shown or offered rendering it fairly or reasonably probable that the child likely had or could have contracted the disease from such source or sources.

However, it was, in effect, contended by counsel for defendant that such facts and circumstances already were in evidence when the offered testimony was refused. Such contention is worthy of consideration. As already observed, the family consisted of the father, mother, the oldest daughter 16 years of age, the assaulted child 10 years of age, and another daughter 6 years of age, and the defendant a roomer and boarder. They occupied an apartment of four rooms, the front room, where the girls slept, a bedroom occupied by and where the defendant slept, a dining room, where not directly, but indirectly, shown, the father and mother slept, and the kitchen, pantry, and bathroom. We have already referred to the testimony of the county physician who made the examination of the defendant. The other physician, who examined the child, and who testified on behalf of the state that it was afflicted with gonorrhea, after testifying in effect as did the other physician that the disease generally is communicated by and through sexual intercourse or contact, among other things, on cross-examination testified in substance that gonococcus was a germ which grew very poorly on the mucous membrane outside of the body, but grew very easily on the mucous membrane in the body, particularly in the genital organs, and that it was very unusual to find it, but occasionally was found, in the eyes or nose, and thrived better in the region of the genital organs; that the disease "could be" communicated or transmitted without having sexual intercourse, and so "could be done" by parties using the same towel, and that to transmit

the disease it was not "necessary for the parties to have sexual intercourse," and that the germs of the disease on exposure were short lived and communicable only from a fresh smear or discharge containing the germs. From such testimony, and from the manner in which the family lived together as indicated, it is contended that the jury could reasonably infer that that child contracted the disease from other members of the family by the use of towels, cloths, or other articles, and not from the defendant. On the other hand, it is contended by the state that on the record a finding by the jury that the child contracted the disease from such source at best would be based, not on reasonable inferences, but on mere conjecture and improbabilities, and that the proffered evidence related only to a circumstance adduced by the state in corroboration of the testimony of the child, and did not contradict her testimony that the defendant had in fact assaulted her as in the information alleged, nor tend to dispute any of the circumstances in detail related by her under which the offense was committed.

While it may be said that it is more probable that the child contracted the disease from the defendant yet on the record we cannot say that the child could not or may not have contracted it from the source claimed by the defendant. Had the proffered evidence been admitted, we cannot say but that it might have been sufficient to have raised a reasonable doubt in the minds of the jury as to whether the child contracted the disease from the defendant or from the source as claimed by the defendant, and thus may have led to an acquittal.

We are thus of the opinion that the exclusion of such proffered testimony was prejudicial error, for which the judgment must be reversed and the case remanded for a new trial. Such is the order.

THURMAN, C. J., and CHERRY and HANSEN, JJ., concur.

FRICK, J., died before announcement of decision.