Argued December 20, 1934; affirmed January 15, 1935

# GOODALE *v.* HATHAWAY

(39 P. (2d) 678)

*W. O. Sims,* of Portland (Sims & Sims, of Portland, on the brief), for appellant.,

*Paul R. Harris,* of Portland (Davis & Harris, of Portland, on the brief), for respondent.

BELT, J. This is a personal injury action arising out of an automobile collision. In view of the errors assigned, no statement of facts is necessary. There was no motion for nonsuit or directed verdict. Hence this court is not concerned with the evidence relative to the issue of negligence. From a judgment in favor of plaintiff in the sum of $2,500, the defendant appeals.

◼ Error is predicated on the denial of motion for mistrial because of the alleged misconduct of counsel in bringing to the attention of the jury the matter of insurance. Harry Cambridge, an automobile mechanic, was called as a witness for the plaintiff and, on direct examination, thus testified relative to the condition of the defendant's car after the accident:

"Q. Would you be able to tell just about what the damage was? A. Yes. The frame was bent in such shape it was practically ruined, the motor was broken in several places, the radiator smashed, if I remember correctly, the front axle all twisted up and the body was—if I remember correctly there was around 170 some dollars worth of body work run in that figure. *It was smashed so bad the insurance company figured they would replace the automobile.* [Italics ours.]

"Mr. Sims: If the Court please, I object to that statement and I move for a mistrial upon the ground that this witness has brought into this case matters that are irrelevant and improper and prejudicial. It is not responsive to the question.

\*      \*      \*      \*      \*

"The Court: I believe I will deny the motion, and allow an exception.

"Q. I will ask you, Mr. Cambridge, not to say anything about who objected. I just asked you to tell what

the damages were. A. Well, that was about the extent of the damages.''

There is nothing in the record to support the con-contention of counsel for appellant that the matter of insurance was purposely injected into the case. The witness, not versed in the niceties of the law, probably thought it would be no great sin to refer to the attitude of the insurance company. Be that as it may, no error was committed in overruling the motion for mistrial since the question of indemnity insurance came into the case through inadvertence: *Stone v. Oliver,* 135 Or. 4 (294 P. 346); *Bennett v. City of Portland,* 124 Or. 691 (265 P. 433); *Wells v. Morrison,* 121 Or. 604 (256 P. 641); *Melcher v. Connell,* 119 Or. 626 (250 P. 742); *Coblentz v. Jaloff,* 115 Or. 656 (239 P. 825).

■ The principal assignment of error pertains to the argument of counsel for plaintiff to the jury wherein repeated reference was made to the matter of insurance. To fully comprehend this assignment, it is necessary that certain parts of the record prior to argument be considered. After denial of the motion for mistrial no further reference to insurance was made until counsel for defendant—not willing to let the matter rest—revived the subject. Witness the cross-examination of Goodale, husband of the plaintiff, who, on his direct examination, had made no reference, directly or indirectly, to the matter of insurance:

''Q. A certain subject has been raised in this case to which I have made objection and the court has overruled the objection, *so I will now open the subject* by reading to you some testimony, which is a transcript of testimony you gave before [former trial], and ask you if this is true:

'Question: You talked it over, and you told the jury you agreed in Dr. Lukins' office in Chehalis, Washington, on February 6th, 1933, that this was an unavoidable

accident. Now, that is what you said, isn't it? Answer: no, sir.

'Question: Well, what do you mean then? Answer: I said we talked it over and decided that would be the best thing to say. We was talking about our accident report. We were going down to both report this accident, and before we did, we talked it over. We talked it over all the way while we were walking down there; the Major and I walked down together.

'Question: And you agreed you would make that kind of report? Answer: *So we could both get insurance;* for that reason only.

'Question: And did you make that kind of report? Answer: Yes, except that I drew a diagram exactly of how the Major's car came across the pavement and hit my car.

'Question: But you both made a report at the sheriff's office in Chehalis that the accident was unavoidable, didn't you? Answer: At that time I did, yes.

'Question: And you did it *so you could collect his insurance and he could collect yours?* Answer: Yes, that is right.

'Question: Now, that is true, is it? Answer: That is true, yes.'

Did that occur at the former trial? A. Yes, sir." [Italics ours.]

Cross-examination in the instant action continues:

"Q. Now Mr. Goodale, you admitted then and you admit today you made that report for the purpose of both of you *sticking the insurance companies, your company and his company; that is why you did it?* A. Yes, sir." [Italics ours.]

The record discloses the following on redirect examination of Goodale:

"Q. The insurance company didn't repair it?

"Mr. Sims: Just a minute, now. That is objected to.

"Mr. Davis: All right; all right.

"The Court: The question is withdrawn.

"Mr. Davis: You went into that question; we didn't.

"Mr. Sims: No, we didn't. This guy from Chehalis [referring to Cambridge] came down to shoot the insurance in.

"Mr. Davis: Who shot the insurance in?

"Mr. Sims: This guy from Chehalis, this willing witness."

Charles E. Mayhew, a witness on behalf of the defendant, testified on direct examination as follows:

"Q. (Mr. Sims): After this collision occurred, what conversation, if any, did you hear between Major Hathaway and Mr. Goodale in regard to who was to blame, and so forth? A. Well, Major Hathaway came around and went to talking to this other man that was in the car, and they both pulled out a book. I noticed them pull a book out of their pocket; I don't know what was in the book. One of them said, 'Well, a pretty bad wreck.' He said, 'You sue me and I will sue you and we will get our cars fixed.' That was all they said, that I heard.

"Q. Who made that statement? A. I wouldn't say which one of them made it first. It was said right there between them. They both had a book in their hand. He said, 'You sue me and I will sue you, and we will get our cars fixed up.' He said, *'I am fully covered by insurance.'* [Italics ours.]

"Q. Which one said that? A. Well—"

We also note in the direct examination of the defendant that the subject of insurance was again brought to the attention of the jury.

"Q. (Mr. Sims): What did Mr. Goodale say to you in the presence of his wife about what caused this accident? A. He said it was an unavoidable accident, he didn't believe it would be my fault or his fault.

"Q. What else did he say? A. *He asked me if I carried insurance.*

"Q. What did you ask him? A. I didn't ask him anything, sir.

"Q. What did he say about himself? A. *He said he carried insurance and wanted to know if I carried insurance.*" [Italics ours.]

F. M. Arnold, the insurance adjuster, was called as a witness in behalf of the defendant and, on cross-examination, counsel for plaintiff questioned him as to whom he represented and what interest he had in the case. The record is replete with the controversy between counsel with reference to the insurance company which Arnold represented but, for the sake of brevity, only a portion of the record will be set forth. Cross-examination:

"Q. Well, isn't it a fact that you are representing the insurance company? A. Representing what?

"Q. Representing the insurance company in connection with this matter?  *  *  *  A. No, not an insurance company; an association.

"Q. Who paid you for going over there? A. Nobody.

\*        \*        \*        \*        \*

"Q. And nobody promised to pay you? A. Nobody promised to pay me.

"Q. Who are you representing? A. Who am I representing?

"Q. Yes.  *  *  *  A. I told you I represented an association of Army and Navy officers.

"Q.  *  *  *  They pay you as their adjuster, don't they? A. Sometimes."

Redirect examination by Mr. Sims:

"Q. Now will you explain what you meant by the use of the words, 'insurance company?' A. Sometimes when we have a little money in the pot we call it insurance company, but when we are all broke, we give it its real name and call it the association."

During the re-cross-examination of this witness by Mr. Davis of counsel for the plaintiff, it was agreed that the entire transcript of the testimony given by this wit-

ness on former trial could be read to the jury. Witness the following portion of the record:

" 'Cross examination:

'Q. You offered to make a compromise? A. Yes, I did.

'Mr. Sims: Just a minute. I don't see how this is cross examination. *You got insurance in this case, and I want you to put it in to the full extent. Just dive right in. I will go in with you, but this is not proper cross-examination, and irrelevant and immaterial.'* " [Italics ours.]

Under this state of the record, where insurance loomed as a full moon on a clear night, was it reversible error for counsel for the plaintiff to refer in his argument to the jury to the fact that the defendant was insured and to comment concerning the credibility of the insurance adjuster? During the course of the argument, Mr. Davis said:

"I want to say to you now, ladies and gentlemen of the jury, this case was tried about a month ago. I knew what we were up against; I knew our friend here representing the insurance company would take all the time he wanted to take."

Mr. Sims took exception to such statement and renewed his motion for mistrial. The court sustained the objection and requested counsel "to keep within the evidence and reasonable deductions therefrom". Mr. Davis then remarked, "All right; I knew we were fighting an insurance company". Many other references to insurance were made during the course of the argument.

■ Ordinarily such argument would be ground for reversal but, in view of the fact that counsel for the defendant threw down the gage of battle relative to the matter of insurance, we think he must abide the consequences. The range of argument rests largely in the discretion of the trial court and, in the instant case, we

see no abuse thereof. If error was committed it was invited. No doubt counsel for the plaintiff was delighted to accept the challenge and it must be conceded that he made the most of his opportunities, but we are inclined to the belief, under all of the circumstances, that the jury was not controlled by passion or prejudice. The verdict was not large. We feel that much of this undue controversy concerning the matter of insurance might well have been checked at its inception had the court seen fit to do so.

■ This court has held that when the matter of indemnity insurance is not improperly brought into the trial of a personal injury action, reference to the same may be made in an argument to the jury: *Kitchel v. Gallagher,* 126 Or. 373 (270 P. 488). It was within the range of legitimate argument to comment upon the bias and interest of the insurance adjuster for, as was said in *Webb v. Hoover-Guernsey Dairy Co.,* 138 Or. 24 (4 P. (2d) 631):

"When parties interested, either directly or indirectly, in the result of litigation, send their agents to interview witnesses and prepare statements for such witnesses to sign, the jury has not only the right to know who such agents are, but whom such agents represent, when a discrepancy arises between the testimony given by the witness on the stand and the statement prepared by such agent."

Also see *Fletcher v. Saunders,* 132 Or. 67 (284 P. 276).

■ Error is asserted because the court permitted the witness Cambridge, an automobile mechanic, to testify to the condition of defendant's car after the accident. It is claimed that such testimony had no bearing on any of the issues of the case. We are unable to agree with this contention as we think that evidence relative to the extent of damage to the car was entitled to go to the

jury for what it was worth as to the question of speed. As was said in *Schairer v. Johnson,* 128 Or. 409 (272 P. 1027):

"Nor can fault be found with the trial court for receiving into the record testimony relating to the wrecked and ruined condition of the defendant's automobile after the accident. The demolished car was a mute but effective witness tending to prove that the automobile struck the telephone pole with much force and great momentum, which resulted from the speed at which the defendant was driving when he attempted to make the turn."

Also see *West v. Jaloff,* 113 Or. 184 (232 P. 642, 36 A. L. R. 1391), and *Monner v. Starker,* 147 Or. 118 (31 P. (2d) 1109).

We see no other assignments of error that merit attention.

The judgment of the lower court is affirmed.

ROSSMAN, J., not sitting.