Argued May 19, reversed July 6, 1960

# MORRIS *v.* WILLIAMS ET AL
### 353 P. 2d 865

*John L. Luvaas*, Eugene, argued the cause for appellants. On the brief were Luvaas, Cobb & Richards, Eugene.

*E. B. Sahlstrom*, Eugene, argued the cause for respondent. With him on the brief was Philip A. Levin, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

ROSSMAN, J.

This is an appeal by the three defendants from a judgment in the amount of $2,500 which the circuit court entered against them in favor of the plaintiff, a minor, after the latter as well as the defendants had moved for a directed verdict. At that juncture the jury was excused and later findings of fact and conclusions of law favorable to the plaintiff were signed. Based upon them the challenged judgment was entered. The complaint charged that an automobile in which the plaintiff rode as the non-paying guest of the defendant, Vernon LeRoy Williams, was driven by the latter in a "grossly negligent" manner and "with a reckless disregard" for the plaintiff's rights into a large brick pillar. In that way the plaintiff suffered, according to her complaint, injuries for which she sought award of damages. The two defendants whom we have not so far named were the parents of Vernon LeRoy Williams and the owners of the automobile. It is conceded that the car was used upon the occasion in question for family purposes. Vernon LeRoy Williams was a minor and a high school student.

The first assignment of error is based upon an order which denied the defendants' motion for an involuntary nonsuit; and the second challenges the order which denied the defendants' motion for a directed verdict. The latter submitted a contention that the record lacked "sufficient evidence to go to the jury as to gross negligence or reckless disregard of the rights of others." We will now consider the second assignment of error.

The accident which resulted in the plaintiff's injury occurred March 24, 1957, at about midnight upon a thoroughfare near Eugene, to which the witnesses referred as the Country Club Road. Upon the occasion in question a heavy rain was falling and the pavement was wet. The rain, according to the plaintiff, rendered it "kind of hard to see. I mean, you could see, but it was hard." The windows were not steamed. The plaintiff and a friend of hers, Betty Jean Lepley, had entered the automobile of the defendant, Vernon LeRoy Williams, to whom we will hereafter refer as the defendant, only a short time before the accident occurred. Betty Jean Lepley, to whom we will refer as Betty, was seated beside the defendant in the front seat of the car. In the rear seat, immediately back of the defendant the plaintiff was seated. Beside her was an acquaintance of the defendant by the name of LeRoy McCay. The defendant intended to drive to the home of a friend of his, Marcia Lyon, for a brief visit and then take the plaintiff and Betty to their homes in Springfield.

After the guests had entered the defendant's car the latter proceeded for a short distance north along a thoroughfare known as Coburg Road, and, after passing a place to which the witnesses referred as Ferry Street Bridge, turned to the left (west) thereby

entering upon Country Club Road. The speed of the car at about that place was "thirty, thirty-five" miles per hour, so the plaintiff swore. A quarter mile ahead on the right was the entrance to the Eugene Country Club, the situs of the accident. No witness mentioned the width of Country Club Road. Likewise, no one indicated whether it was level or otherwise. The defendant's unchallenged and uncontradicted testimony indicates that Country Club Road is paved and that its surface is rough or anti-skid.

The defendant intended to continue along Country Club Road but when he neared the entrance to the grounds of the Eugene Country Club a car approached from the opposite direction. The defendant did not collide with that car but its presence upon the road caused him to veer to the right where he struck one of two masonry pillars that marked the entrance to the grounds of the club. Thereby the plaintiff sustained her injury.

The plaintiff testified that after the defendant had entered upon Country Club Road he accelerated the speed of his automobile and was soon proceeding at 55 miles per hour. According to her, he was traveling at that rate of speed as he neared the scene of the accident and at the moment of the impact of his car with the masonry pillar.

At the entrance to the club grounds Country Club Road swings or curves somewhat to the left for one who is moving in the direction of the defendant. The entrance to the club grounds is a private, paved roadway which branches off of Country Club Road at an angle of about 90 degrees. It is to the right for one who is going in the direction of the defendant. Two masonry pillars, which we have mentioned, mark the entrance to the club's grounds. The pillars stand close

to the pavement of Country Club Road and on either side of the private road that leads into the club grounds.

As the defendant's car (coming from the east) approached the entrance to the club's grounds the car coming from the west was observed. The plaintiff testified that she saw it at a distance of "maybe a hundred feet" and said that she was looking straight ahead at that time. The defendant swore that he saw it about thirty to thirty-five feet before he came to the club entrance. He collided with the masonry pillar before the oncoming car reached that point and, accordingly, it may be that he saw the approaching car at about the same time as the plaintiff. A change in the grade of the road immediately beyond the club entrance, as well as the moderate turn to the left that takes place there, partially conceals cars that come from the direction as the one to which we just referred. The plaintiff appears to admit that the headlights of the oncoming car troubled the defendant. He swore that they blinded him and that he could not see either edge of the pavement. He feared a collision, so he testified. It will be noticed that due to the change in direction that Country Club Road makes at the point where the private road enters it the headlights of a car coming from the west can strike in the eye a motorist coming from the east and prove troublesome to him. That may be especially true if the pavement is wet.

When events had reached the point just mentioned Betty screamed and McCay called to the defendant to turn into the country club's grounds. As a witness, McCay explained that he thought that the other car was on the wrong side of the road. When the crisis just noted had developed the defendant turned to the right and then, as we have seen, collided with the west

pillar. The plaintiff testified that the defendant had not applied his brakes at any time and that his speed was 55 miles per hour. We shall give that testimony effect, but mention the fact that the defendant swore that he had applied his brakes and that his speed was "twenty-five to thirty" miles per hour. He claimed that he skidded into the pillar after he had applied his brakes. The force of the impact wrecked the defendant's car.

The width of the private road that leads off of Country Club Road into the grounds of the club was not mentioned by any one. Likewise, no one disclosed the distance between the two pillars. The testimony indicates that the pavement of the private road is smooth and slippery.

The plaintiff, in referring to the defendant's speed as he drove along Country Club Road, testified, "I estimated around fifty-five" miles per hour. She did not claim that she had seen the speedometer and conceded that her knowledge of driving was very limited. She did not have a driver's license. She swore that the defendant's car continued to travel at 55 miles per hour to the moment when it struck the pillar. As the car was proceeding along its way she was engaged in conversation. In making her estimate of speed she depended in part upon the damage that was inflicted by the force of the collision. She also testified:

"Q Had you been concerned about the way he was driving?

"A Well, no.

"Q So far as you could tell was he driving perfectly normal?

"A Except for going fast.

*       *       *

"Q Did anybody actually make any objection at all as to his driving?

"A No.

"Q Was he driving, so far as you could tell, perfectly normal?

"A What do you mean by 'perfectly normal'?

"Q Well, was there anything unusual or strange about his driving?

"A He was just going fast, that was all."

The record indicates that very little traffic was encountered by the defendant. According to the plaintiff, two cars were met on Coburg Road near Ferry Street Bridge. None was seen on Country Club Road until the defendant's car approached the entrance to the Eugene Country Club and met the car whose lights seemingly confused the defendant.

Betty, the aforementioned friend of the plaintiff, was one of her witnesses and gave some testimony which was at variance with the plaintiff's. We will, however, give the plaintiff the benefit of the testimony which she personally gave. Betty, who was seated in the front seat, testified that the lights of the oncoming car were very bright and blinding.

The defendant's unchallenged testimony indicates that he had driven along Country Club Road five times and that he was familiar with the entry way into the club's grounds. There is no claim that he was engaged in conversation or other diversion when the operation of his car needed his attention. We observe that his car had a radio set and that it was playing at the times in question. The parties are agreed that the indicated speed on Country Club Road is 55 miles per hour.

■■ The foregoing is a sufficient review of the evidence which is favorable to the plaintiff. Upon the motion for a directed verdict which we now have under consideration the plaintiff is entitled to the evidence most favorable to her and to all reasonable inferences

that can be drawn from it. Viewing the evidence in that way it indicates that upon a dark and rainy night when visibility was poor the defendant drove his automobile along Country Club Road at a speed of 55 miles per hour—the indicated speed. The road was paved and no traffic upon it was encountered until the defendant neared the private road that led off to the right into the grounds of the Eugene Country Club. Up to that point no one had criticized or commented upon his driving and the plaintiff, as a witness, expressed no fault with it except that she thought that he was "going fast." As the defendant neared the private road the car coming from the opposite direction appeared and its lights gave the defendant trouble which he was unable, in the brief available time, to solve successfully. When the lights struck him in the eyes and one of the guests screamed while another called out for him to turn into the club's grounds he made the turn which brought his car into collision with the masonry pillar.

ORS 30.110 provides:

"No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against the owner or operator for injury * * * in case of accident, unless the accident was * * * caused by his gross negligence * * * or his reckless disregard of the rights of others."

We have mentioned that the complaint charges the defendants with recklessness and gross negligence; it submits these specifications:

(1) Failure to maintain an adequate lookout
(2) "A speed that was greater than was reasonable and prudent"
(3) Lack of sufficient control.

Finding VI entered by the trial judge states:

"That at said time and place the defendant Vernon Leroy Williams drove said automobile in a grossly negligent manner, with a reckless disregard for the rights of the plaintiff herein, in that he failed to keep and observe a proper lookout; he failed to give proper attention to his driving; he drove said automobile at a speed that was greater than was reasonable and prudent, having due regard for all the existing conditions; the darkness, the heavy rainfall, the grade, curve and slippery condition of the highway and its proximity to the Eugene Country Club; and he failed to keep said automobile under sufficient control. That at said time and place he demonstrated an 'I don't care what happens' attitude. That the foregoing negligent acts of defendant Vernon Leroy Williams combined to constitute gross negligence."

■ After the trial judge had entered that finding and had rendered judgment for the plaintiff this court announced its decision in *Williamson v. McKenna*, 223 Or 366, 354 P2d 56. Mr. Justice O'CONNELL, the writer of that opinion, gave to the problem involved in that case, and likewise in this, extensive painstaking attention. In so doing he consulted the decisions of all other jurisdictions that have legislation similar to ORS 30.110 and that have struggled with the difficulty of distinguishing gross negligence from ordinary negligence. Possibly one may sense the difference in meaning between the two terms, but no one has been able to draw a line that separates conduct identified as ordinary negligence from that which a statute such as ORS 30.110 authorizes courts to condemn as gross negligence. In the absence of such a line trial judges have been perplexed in ruling upon motions for nonsuit and for directed verdict in cases of this kind. As a further result of the difficulty the number of appeals

taken in cases of this character has been inordinate. *Williamson v. McKenna* possibly could not define the term gross negligence better than had been accomplished previously, but it was able to categorize the holdings in the decisions and, accordingly, set forth in succinct language the different types of erratic driving for which ORS 30.110 authorizes recovery by the non-paying guest. One of those rules is the following: "The defendant's conduct must involve a high degree of probability that harm will result." Another is: "Inadvertent conduct, without more, will not constitute recklessness." That rule is followed with the explanation: "Ordinarily, one who, through momentary thoughtlessness, relaxes his vigilance for the safety of others is not grossly negligent."

We think that the defendant was confronted with a sudden development resembling an emergency, and in trying to solve it failed; but we do not think that his efforts can be deemed recklessness or gross negligence as those terms are dealt with in the Williamson decision. If it could be said that defendant may have been guilty of some negligence prior to the moment when he came to the scene of the accident it must be remembered that the charge against him is not that of ordinary negligence but of recklessness and gross negligence. The category of "Inadvertent conduct, without more, will not constitute recklessness" includes action taken in an emergency. We know of no basis for believing that the defendant, as he drove along, displayed an I-don't-care attitude.

We sustain the assignment of error under consideration. The defendant's motion for a directed verdict should have been granted.

The judgment of the circuit court is reversed.