Argued May 7, affirmed July 24, 1963

# STATE OF OREGON *v.* BETTS

384 P. 2d 198

*David C. Silven,* Baker, argued the cause and filed a brief for appellant.

*Jesse R. Himmelsbach, Jr.,* District Attorney, Baker, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

DENECKE, J.

The defendant was convicted of negligent homicide. A passenger in a vehicle driven by the defendant was killed when the car left the road and crashed. The defendant was indicted pursuant to ORS 163.091, the pertinent part of which is as follows:

"When the death of any person ensues within

one year as the proximate result of injuries caused by:

"(1) The driving of any motor vehicle or combination of motor vehicles in a grossly negligent manner; * * *

"* * * * *

the person driving such vehicle or combination of vehicles is guilty of negligent homicide, * * *."

The indictment against the defendant charged as follows:

"* * * [the defendant] did then and there unlawfully and feloniously drive said motor vehicle in a grossly negligent manner, to-wit: by then and there driving said motor vehicle on said highway while being under the influence of intoxicating liquor, by then and there driving said motor vehicle carelessly and heedlessly in reckless disregard of the rights and safety of others, by then and there driving said motor vehicle at an excessive rate of speed, by then and there driving said motor vehicle upon the left side of said highway and by then and there failing to exercise the care and caution required to keep said motor vehicle under control, * * *."

### I

■ The defendant, at the beginning of the trial and during the trial, moved to require the state to elect whether it was proceeding under the above-quoted statute or under a combination of the driving while under the influence of intoxicating liquor statute and the manslaughter statute.

ORS 483.992 makes driving while under the influence of intoxicating liquor a crime. ORS 163.040 states that, "Any person who, in the commission of any unlawful act * * * involuntarily kills another,

is guilty of manslaughter." However, this same section, in addition, provides: "The provisions of this subsection shall not apply to the killing of any person where the proximate cause of such killing is an act or omission defined as negligent homicide. in ORS 163.091."

The District Attorney conceded that he was proceeding under the negligent homicide statute and not the manslaughter statute. The court made it clear in its instructions that the charge against the defendant was gross negligence and not driving while under the influence of intoxicating liquor. The trial court instructed the jury that whether or not the defendant was under the influence of intoxicating liquor was only a circumstance to be considered in determining whether or not the defendant was grossly negligent in the three particulars charged: speed, control and driving on the left side.

While the defendant's motion to elect was denied, the action of the state and the trial court effectively confined the proceedings to one for negligent homicide by driving in a grossly negligent manner. This is all the defendant would have received if his motion had been granted. Therefore, this assignment of error is not well taken.

II

■ The defendant contends that there was no evidence from which the jury could find the defendant guilty of gross negligence. The defendant contends: "The State was required to establish more than one negligent act committed under such circumstances as to constitute gross negligence," and cited *Williamson v. McKenna*, 223 Or 366, 400, 354 P2d 56. The particular portion of *Williamson v. McKenna*, supra, cited by

the defendant, took cognizance of those cases in which a series or combination of negligent acts transformed defendant's conduct to the level of gross negligence. However, neither that decision nor any other decision holds that in order to prove gross negligence there must be proof of two or more negligent acts. Evidence of excessive speed, lack of control, etc., alone, under certain circumstances can amount to proof of gross negligence.

■ In this case there was evidence from which the jury could determine that the defendant was grossly negligent by reason of his excessive speed and lack of control. There was testimony that he was traveling at a speed of 90 miles an hour. The car failed to make a curve. The vehicle went off the highway at the beginning of the curve. It was light and dry. The road was two lane. It appears to have a blacktop surface. The shoulders were gravel. There was a "Slow" sign, a sign indicating a curve, and a sign stating the indicated speed was 45 miles per hour. The signs warning of the curve were visible approximately a quarter of a mile from the point where the car left the highway. There was evidence that the defendant was intoxicated. Earlier, he had driven the car in an erratic manner. His speed at an earlier time had been too fast. The car owner, who was a passenger, so testified. She stated that at that time she asked the defendant to slow down and, according to her, he did.

Two recent civil gross negligence cases most resembling the present one are *Bland v. Williams*, 225 Or 193, 357 P2d 258, and *Holman v. Barksdale et al*, 223 Or 452, 354 P2d 798. In *Bland v. Williams*, supra, the driver's speed was 60 miles per hour in the fog and he failed to make a curve. This court held that as a matter of law the defendant was not grossly negli-

gent because the evidence was that he failed to make the curve because of momentary inadvertence rather than excessive speed or lack of control. In *Holman v. Barksdale,* supra, the speed was 40 miles per hour. The defendant started to enter a curve and then realized his speed was too fast for safety so he applied the brakes; this caused him to lose control of the car and skid off the road. This court held that as a matter of law there was no gross negligence. The above statements of fact in these two cases in our opinion clearly distinguish them from the present case.

## III

■ Over defendant's objection testimony was introduced that one-half hour before the accident the defendant made such an accelerated start that he left ten feet of tire marks. Defendant contends such evidence is too remote to have any relevancy on the question of what caused the death. Both before and after *Williamson v. McKenna,* supra, the host's driving prior to the time and place of the accident has been considered relevant upon the issue of what was the host's state of mind at the time of the accident. *Keefer v. Givens,* 191 Or 611, 630-631, 232 P2d 808; *Morris v. Williams et al,* 223 Or 50, 57, 353 P2d 865.

The trial court did not err in the introduction of such testimony.

## IV

■ The defendant requested the following instruction, which was not given:

"There has been some evidence introduced in this case relative to the extent of damage to the automobile, the length of skid marks and the distance which the automobile traveled after it left the highway.

"The only purpose for the introduction of such evidence was to give you all the circumstances surrounding the accident. You are specifically instructed and admonished that you may not infer any particular speed nor infer that the car was traveling at an unreasonable speed from such evidence. It was not introduced for that purpose, and you shall not consider such evidence in connection with your determination of whether or not the car was driven at an unreasonable speed."

Defendant assigns the court's failure to so instruct as error. The trial court gave no instruction on this subject.

The extent of damage to the automobile, skid marks, and the distance the vehicle travels after it has left the highway are relevant on the question of speed. *Burghardt v. Olson,* 223 Or 155, 167, 349 P2d 792, 354 P2d 871; *Goodale v. Hathaway,* 149 Or 237, 39 P2d 678.

■ *Cameron v. Goree,* 182 Or 581, 602-606, 189 P2d 596, held that the car damage in that case was not evidence of excessive speed, as such damage could just as reasonably have been inflicted by a car driven at a reasonable speed. That decision recognizes that car damage may, in some instances, indicate excessive speed. Similarly, *Lemons et al v. Holland et al,* 205 Or 163, 189, 284 P2d 1041, 286 P2d 656, is a case in which the court found that the skid marks, debris and the distance the body was thrown did not furnish evidence of any excessive speed, as such physical facts could just as probably have been caused by a car driven at a reasonable speed.

In this case the 271 feet of skid marks on the highway, the 42 feet which the car then soared through the air, the 50 feet which the car then plunged through a filled irrigation ditch, and the last 47 feet which it

plowed through a field is certainly relevant evidence which a jury could consider in determining whether or not the defendant was traveling at an excessive speed.

## V

■ The trial court gave the following statutory instruction:

"Evidence is to be estimated not only in accordance with its own intrinsic or inner weight, but also according to that which it is within the power of one side to produce and of the other to contradict. Therefore, if weaker and less satisfactory evidence is offered when stronger and more satisfactory was within the power of a party to produce, that evidence offered should be viewed with distrust. * * *"

The defendant excepted to this on the ground that it was comment on the defendant's failure to testify on his own behalf.

We have repeatedly held that in a criminal case the giving of the above-quoted instruction should be avoided unless limited to the state's case, but so instructing is not reversible error, particularly when the court also instructs, as it did here, that the jury can draw no unfavorable inference from the defendant's failure to testify. *State v. Holleman*, 225 Or 7, 357 P2d 264; *State v. Patton*, 208 Or 610, 612, 303 P2d 513; *State v. Thomson*, 203 Or 1, 16, 278 P2d 142.

## VI

The physician who treated the defendant when he was brought into the hospital after the accident was permitted to testify to defendant's injuries, defendant's speech and smell and to give his opinion that the

defendant was intoxicated. The defendant objected to this testimony on the ground that this was information obtained from a confidential relationship and, therefore, inadmissible without the defendant's consent. The physician testified that he considered his examination and treatment of the defendant to be in the course of his physician-patient relationship.

ORS 44.040 provides:

"(1) There are particular relations in which it is the policy of the law to encourage confidence, and to preserve it inviolate; therefore a person cannot be examined as a witness in the following cases:

"(a) A husband shall not be examined for or against his wife without her consent, or a wife for or against her husband without his consent; nor can either, during the marriage or afterwards, be, without the consent of the other, examined as to any communication made by one to the other during the marriage. The exception does not apply to a civil action, suit or proceeding, by one against the other, or to a criminal action or proceeding for a crime committed by one against the other.

"(b) An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of professional employment.

"(c) A priest or clergyman shall not, without the consent of the person making the confession, be examined as to any confession made to him in his professional character, in the course of discipline enjoined by the church to which he belongs.

"(d) *A regular physician or surgeon shall not, without the consent of his patient, be examined in a civil action, suit or proceeding, as to any information acquired in attending the patient, which was necessary to enable him to prescribe or act for the patient.*

"(e) A public officer shall not be examined as

to communications made to him in official confidence, when the public interest would suffer by the disclosure.

"(f) A stenographer shall not, without the consent of his or her employer, be examined as to any communication or dictation made by the employer to him or her in the course of professional employment.

"(g) A licensed professional nurse shall not, without the consent of a patient who was cared for by such nurse, be examined in a civil action, suit or proceeding, as to any information acquired in caring for the patient, which was necessary to enable the nurse to care for the patient.

"(2) If a party to the action, suit or proceeding offers himself as a witness, it is deemed a consent to the examination also of a wife, husband, attorney, clergyman, physician or surgeon, stenographer or licensed professional nurse on the same subject." (Emphasis added.)

This statute was enacted in 1862. Deady's Code, Civ Code, § 702. The privilege was later extended to the stenographer-employer and nurse-patient relationship.

■ It should be noted that the part of the statute pertaining to physicians states, "in a *civil* action, suit or proceeding." (Emphasis added.) This statute, however, must be considered in conjunction with ORS 136.510, which provides:

"The law of evidence in civil actions is also the law of evidence in criminal actions and proceedings, except as otherwise specially provided in the statutes relating to crimes and criminal procedure."

The question is, under these two statutes, is information obtained by a physician from a patient privileged in a criminal proceeding?

Under the last-quoted statute it seems clear that all statutes of general applicability relating to evidence are applicable to criminal proceedings unless a criminal statute states to the contrary. For example, ORS 41.690 generally provides that records made in the regular course of business are admissible. This statute does not state it is applicable in civil actions, criminal proceedings, or contain any restrictive language. It is obvious that under the last-quoted statute it governs criminal proceedings unless there is a specific criminal statute providing to the contrary.

Here, however, we do not have a statute such as that given in the example. The specific words of the statute restrict parts of it to civil actions, a part to criminal proceedings, and parts have no restrictions stated. In the subsection relating to husband and wife it states, "The exception does not apply to a civil action, suit or proceeding, by one against the other, or to criminal action or proceeding for a crime committed by one against the other."

The only other subsections in which the restrictive words, "in a civil action, suit or proceeding" appear are those relating to physician-patient and nurse-patient. The subsections relating to attorney-client, priest-penitent, public officer-official confidence and stenographer-employer contain no restrictive words, no reference to civil actions or criminal proceedings. Because of this we conclude that the meaning and intention of the statute making civil rules of evidence applicable to criminal proceedings and the statute creating the privilege are not clear. The answer to the problem cannot be found from the words of the statute.

Washington and California have statutes similar to both of those above quoted and have come to oppo-

site conclusions about the admissibility of such testimony.

From *State v. Miller*, 105 Wash 475, 178 P 459 (1919), through *State v. Sullivan*, 60 Wash2d 214, 373 P2d 474 (1962), the Washington court has held such information to be privileged in criminal, as well as civil, cases. The California court has as consistently held such information is not privileged. *People v. Lane*, 101 Cal 513, 36 P 16 (1894). For an example of a more recent case see *People v. Dutton*, 62 CalApp2d 862, 145 P 676 (1944).

Utah also has two similar statutes. Its court followed the California precedents and held the testimony not privileged. *State v. Dean*, 69 Utah 268, 254 P 142 (1927). In *State v. Bounds*, 74 Idaho 136, 258 P2d 751 (1953), this question was answered by the Idaho court. It only considered the Idaho privilege statute, which reads like Oregon's, and states that the privilege exists in civil proceedings. The Idaho court expressly rejected the Washington precedents and held that privilege did not extend to criminal proceedings.

Pennsylvania has a privilege statute similar to that of Oregon and Idaho, stating that physician-patient communications are privileged in civil proceedings. The Pennsylvania court held that the privilege did not apply in criminal proceedings. *Commonwealth v. Edwards*, 318 Pa 1, 178 A 20 (1935).

The latest edition of Wigmore, 8 Wigmore, Evidence (McNaughton Rev 1961), §§ 2380 et seq, persuasively attacks the privilege in either civil or criminal proceedings. Because of the Oregon statute there is no question, however, that in this jurisdiction the privilege exists in civil proceedings.

■ Ostensibly, making communications between physician and patient privileged was to facilitate the physician's accomplishing his mission, i.e., diagnosing and curing the patient. It has been stated that if the information obtained from this relationship is not privileged, the patient will not reveal all pertinent information to his physician and the physician will, therefore, be handicapped in his treatment of his patient. *Edington v. Mutual Life Ins. Co.,* 67 NY 185, 194 (1871). Wigmore, supra, § 2380a, convincingly attacks this supposition. Professor Morgan joins in this attack; Foreword to Model Code of Evidence, pp 28-30.

■ Assuming this supposition does have some basis in fact and the privilege is responsible in some instances for a physician being better able to perform his mission, it is still necessary to examine the other side of the proposition. How is the public welfare, that part that is dependent upon the efficient administration of criminal justice, served by the privilege? Unquestionably, the administration of criminal justice is impeded by the privilege. A physician attending a defendant is frequently the sole or most competent source of very relevant evidence. In the present case the physician was the person best qualified to testify to a relevant fact,—was the defendant intoxicated? In other cases the question could be,—was the defendant under the influence of narcotics or how recently did the defendant's wound appear to have been inflicted? It seems obvious that the testimony of the treating physician is highly important in many criminal cases.

We conclude that the dubious benefit provided by throwing the veil of privilege over the patient-physician relationship is outweighed in criminal proceedings by the advantage to the public secured by the efficient administration of criminal justice which is

obtained by permitting the introduction of competent and relevant evidence which the physician can give about his patient. Upon the basis of this belief the Oregon statutes are interpreted as limiting the physician-patient privilege to civil proceedings. The trial court was correct in permitting the physician to testify.

## VII

█ The defendant assigned as error the trial court's failure to remove from the consideration of the jury the two specifications of gross negligence that the defendant failed to keep the vehicle under control and drove the vehicle upon the left side of the highway. The previous statement of facts makes it apparent that the charge of lack of control presents a question of fact. See *McReynolds v. Howland*, 218 Or 566, 346 P2d 127, in which the correlation between speed and control is examined.

With respect to the charge of driving on the left side of the highway, the trial court, after denying defendant's motion to strike this specification, instructed the jury in this respect in the language of the Oregon Motor Vehicle Laws. ORS 483.308. The applicable part of that statute requires:

"(2) The driver of a vehicle shall not in any event drive to the left side of the center line of a highway

"(a) When approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of 500 feet; * * *."

█ Under this statute this court has held "a failure to keep to the right when there is nothing to the left which will be affected by the car's presence there does not condemn the driver as negligent." *Barnes v. David-*

*son et al,* 190 Or 508, 520, 226 P2d 289; *Newbern v. Exley Prod. Exp. Co.,* 212 Or 458, 469, 320 P2d 678. We now hold specifically that this statute has no application unless other traffic is involved in the accident.[1] When part (2) of the statute is read in conjunction with part (1) the intent of the statute is clear. Part (1) directs that one shall not drive on the left side of the road when passing other cars unless one can clearly observe the left side and that side is clear of oncoming traffic. Part (2), in effect, states that, passing or not, one shall not drive to the left side when the driver's ability to see oncoming traffic is obstructed by the crest of a grade or a curve.

■ For the reasons above stated the trial court's refusal to withdraw the specification of gross negligence that defendant drove on the left side of the road and its instructing the jury in this regard is error.

The remaining question is whether the proceeding should be reversed because of this error.

Art VII, § 3, of the Oregon Constitution provides:

"* * * If the supreme court shall be of opinion, after consideration of all the matters thus submitted, that the judgment of the court appealed from was such as should have been rendered in the case, such judgment shall be affirmed, notwithstanding any error committed during the trial; * * *."

This court has recently affirmed convictions in criminal appeals in which it was found that error had occurred but the court was of the opinion that the judgment of conviction was one that "should have been rendered in the case." *State v. Clark,* 227 Or 391,

---

[1] Driving on the left when such driving is prohibited by statute is a traffic offense, however, regardless of whether or not other traffic is in the vicinity.

362 P2d 335 (Instruction to the jury that if the court erred the defendant has an appeal to a court where any error can be corrected; rape conviction affirmed.); *State v. Braley,* 224 Or 1, 355 P2d 467 (The trial court erred in failing to instruct concerning the effect of intoxication upon the defendant's capacity to commit the act with premeditation; the conviction of first degree murder was reduced to second degree.); *State v. Cahill,* 208 Or 538, 575, 293 P2d 169, 298 P2d 214, cert den 352 US 895, 77 S Ct 132, 1 L ed2d 87 (The trial court erred in admitting evidence on the issue of forgery of a signature on a receipt for public funds; the conviction for conversion of public funds affirmed.)

However, in *State v. Wederski,* 230 Or 57, 368 P2d 393, this court refused to affirm a conviction although urged to do so under this Oregon constitutional provision. The error was the district attorney's argument to the jury. He argued that a state's witness would have testified favorably if the opportunity had offered itself. Also, an indirect comment upon defendant's failure to take the stand was made.

We do not know what the verdict would have been had the error in this case not occurred. This is never possible. The charge of gross negligence by driving on the left side of the road seems inconsequential and technical to this court. The charges of speed and control seem to be the heart of the case. The defendant was on the left because his speed and lack of control prevented him from staying on the right. Whether or not the jury so viewed the case we do not know.

Nevertheless, we construe the constitutional command to require that if we believe the jury almost certainly would have, and ought to have, reached the verdict it did, without the erroneous ruling and in-

struction, we must affirm the judgment. We find that is the situation here.

Without again reviewing all the facts, those so overwhelming against the defendant are the course of the car as shown by uncontradicted physical facts, indicating great speed and lack of control, and the evidence of defendant's intoxication.

Pursuant to the constitutional provision above quoted the judgment is affirmed.

PERRY, J., specially concurring.

I am unable to agree with the majority that under the statutory law of this state information obtained by a physician in the treatment of a patient is privileged only in civil matters and has no application to criminal cases. In my mind there is no ambiguity in the statutes such as seems to exist in the minds of the majority. I would follow the interpretation placed upon similar statutes by the Supreme Court of the State of Washington, that the statute applies in both situations. *State v. Sullivan*, 60 Wash2d 214, 373 P2d 474; *State v. Miller*, 105 Wash 475, 178 P 459. However, I concur in the result reached by the majority.

The evidence of the physician was merely cumulative and did not constitute prejudicial error. Also, the information obtained by the physician was such as could have been obtained and in fact was obtained by laymen. It was therefore not of a confidential nature as contemplated by the statute.