330 F.2d 510
 Anton J. STEINBOCK, dba Klamath Aircraft Service, Appellant,
v.
Ralph SCHIEWE, Bette Schiewe, his wife, and Janice Nechanicky, Appellees.
Ralph SCHIEWE and Janice Nechanicky, Cross-Appellants,
v.
Anton J. STEINBOCK, dba Klamath Aircraft Service, Cross-Appellee.
 No. 18540.
 United States Court of Appeals Ninth Circuit.
 April 6, 1964.
 
 Koerner, Young, McColloch & Dezendorf, John Gordon Gearin, and James H. Clarke, Portland, Or., for appellants-cross appellees.
 Evans & Kennedy, Portland, Or., Samuel W. Fancher, Spokane, Wash., and Jack L. Kennedy, Portland, Or., for appellees-cross appellants.
 Before ORR, CHAMBERS and BROWNING, Circuit Judges.
 CHAMBERS, Circuit Judge.
 
 
 1
 The Schiewes and Miss Nechanicky were guests of Steinbock in his Piper Comanche airplane on the evening of August 14, 1963, at Klamath Falls, Oregon. The initial phases of take-off had been completed, the landing gear had been retracted, and the plane was climbing. At an altitude of about 75 feet above the airfield, the engine began to sputter. Steinbock attempted some emergency procedures which were unsuccessful. The plane crashed and the three guest passengers were injured.
 
 
 2
 Oregon has a guest statute[1] insulating operators from claims brought by guests for simple negligence. The plaintiffs pleaded gross negligence when they brought this diversity action. The trial court sent the case to the jury. Verdicts were rendered for the plaintiffs as follows: Mrs. Schiewe, $12,000; Mr. Schiewe, $1,200; and Miss Nechanicky, $2,000.
 
 
 3
 Steinbock appeals on the ground there was no evidence of gross negligence. Mr. Schiewe and Miss Nechanicky cross-appeal on the ground their awards were unreasonably low. We affirm on both appeals.
 
 
 4
 As to gross negligence, we have reviewed the Oregon cases and we think the trial court's submission of gross negligence[2] to the jury was permissible under those decisions.
 
 
 5
 The trial judge thought there was an issue of fact as to whether Steinbock took off without adequate gasoline in the left wing tank on which the plane commenced operation and that there was a question as to whether Steinbock's test for gasoline in the tank before starting the motor was adequate. Appellant fervently believes that his tests for quantity of gasoline in the tank were adequate and that the left gas tank had an adequate supply of fuel.[3]
 
 
 6
 After reading the transcript, we may have some doubt as an original matter on whether the left gas tank was almost dry, but the first question is whether the jury could reasonably find that the tank was almost dry and that this situation provoked the accident. About dusk before takeoff, the tank was inspected visually by Steinbock. The jury was entitled to find he should have used a stick or a flashlight.
 
 
 7
 But Steinbock says there was gas on the ground from the left wing tank sometime after the crash. The jury may have believed this small amount was enough to keep the tank from being bone dry, but not enough to provide a minimum level necessary for the fuel pump to supply gasoline to the motor.
 
 
 8
 Steinbock says the records of gas delivered to the plane, the flight log and the reading of the gas gauge acquit him. But those were questions for the jury. There was some evidence of grounds to suspect the record sheet on gasoline delivered and the claim of good order of the gauge. The jury may have thought the reason Steinbock made the visual inspection was that he knew the gauge was defective. We do not say he knew it, but the jury could properly say it.
 
 
 9
 If the jury reached the conclusion that a shortage of gasoline in the left wing caused the crash, we have little difficulty on the proposition that it was up to the jury to determine whether Steinbock exercised due care in his preliminary inspection and, if he did not, whether he was guilty of simple or gross negligence. Under the circumstances, we do not believe that here we are required to consider gross negligence further.
 
 
 10
 On the question of damages on which Mr. Schiewe and Miss Nechanicky cross-appeal, certainly the jury was not generous. He had $685.80 special damages and so his net general damages amount to $514.20 in his $1200 award. She had $827.85 special damages and so her net general damages amount to $1,172.15 out of her total of $2,000.
 
 
 11
 The issue of how much real damage they suffered was hotly contested. We have held that our power of review of damage is so limited that ordinarily we cannot do anything about it. We believe we can move when the award is monstrous in size or ridiculously low, but not otherwise. Southern Pacific Co. v. Guthrie, 9 Cir., 186 F.2d 926, and Union Pacific R. Co. v. Johnson, 9 Cir., 249 F.2d 674. In between, we have to sit still and let widely disparate verdicts pass. Here the two awards seem quite low, but we cannot say as a matter of law that they are ridiculously low.
 
 
 12
 In effect, what we have done, and believe we are required to do, is to give the jury the same latitude on damages as we gave it on gross negligence.
 
 
 13
 The parties will divide the cost of the transcript equally. Otherwise, each party will bear his own costs.
 
 
 14
 Judgment affirmed.
 
 
 
 Notes:
 
 
 [1]
 O.R.S. 30.120, now O.R.S. 30.115
 
 
 [2]
 See Williamson v. McKenna, 223 Or. 366, 354 P.2d 56; Burghardt v. Olson, 223 Or. 155, 349 P.2d 792, 354 P.2d 871; Nielsen v. Brown, 232 Or. 426, 374 P.2d 896; Gray v. Galantha, Or., 385 P.2d 746; State v. Betts, Or., 384 P.2d 198, 199
 
 
 [3]
 After the motor began to fail, it is possible that Steinbock could have avoided the crash by switching to the right fuel line. Also, there is some doubt as to whether, in distress, Steinbock manually handled the plane in approved ways which might have permitted a glide back to a safe landing. The jury was permitted to consider several items of alleged gross negligence in connection with the handling of the plane in the emergency. Defendant-appellant's attack is that there was no evidence of gross negligence. Under the pattern which the case and the appeal took, we are not here obligated to test each item of possible gross negligence submitted to the jury. One item properly submitted is enough as against the objections as here framed