Argued and submitted March 3, decision of Court of Appeals reversed; judgment of circuit court reversed, and case remanded to circuit court for further proceedings May 19, 2011

Francis Dale MOREHOUSE,
*Petitioner on Review,*

*v.*

James Colin HAYNES,
*Respondent on Review.*

(CC 0609-09915; CA A136871; SC S058725)

253 P3d 1068

Kathryn H. Clarke, Portland, argued the cause for petitioner on review. Jess M. Glaeser, Portland, filed the brief.

Ralph C. Spooner, Spooner & Much, P.C., Salem, argued the cause for respondent on review. Dan R. Schanz and Melissa J. Ward filed the brief.

Kathryn H. Clarke, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

---

** Landau, J., did not participate in the consideration or decision of this case.

BALMER, J.

## BALMER, J.

The issue in this case is whether the record before the trial court on summary judgment shows that there was no genuine issue of material fact that would provide a basis for a reasonable juror to find that defendant drove recklessly. Plaintiff was injured when his car collided with defendant's car. Plaintiff brought this action seeking economic and noneconomic damages. Because plaintiff was driving without insurance at the time of the collision, an Oregon statute bars him from recovering noneconomic damages unless he can prove that defendant's conduct that caused plaintiff's injuries met the statutory definition of reckless driving. *See* ORS 31.715(1), (5)(c) (so providing). Defendant moved for partial summary judgment on plaintiff's claim for noneconomic damages, and the trial court granted the motion, holding that no reasonable juror could conclude that defendant had driven recklessly. The parties settled the claim for economic damages, and the trial court, based on its summary judgment order, entered a general judgment in favor of defendant. Plaintiff appealed and, in a divided en banc opinion, the Court of Appeals affirmed. *Morehouse v. Haynes*, 235 Or App 482, 234 P3d 1024 (2010). For the reasons that follow, we reverse and remand to the trial court.

We take the facts from the summary judgment record and view those facts and all reasonable inferences that may be drawn from them in the light most favorable to plaintiff, the nonmoving party. *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004). Plaintiff was driving north on Highway 219 between Newberg and Hillsboro, and defendant was driving south on the same road when defendant's car crossed into the oncoming lane of traffic and struck plaintiff's car on a sharp curve. A yellow cautionary sign preceded the curve as defendant approached, showing a 90-degree turn to the left, followed by a 90-degree turn to the right.[1] A smaller yellow cautionary sign below the sign

---

[1] That cautionary sign is identified in the federal guidelines for highway signs, which have been adopted by Oregon, OAR 734-020-005(1), as a "reverse *turn*" sign. Fed. Highway Admin., *Manual on Uniform Traffic Control Devices* at 2C-7 to 2C-8 (2003 ed) (hereinafter *Federal Manual*) (emphasis added). It is distinguished from a "reverse *curve*" cautionary sign, which depicts curves of 45 degrees, rather than

depicting the turns suggested a speed of 25 miles per hour.[2] Following the cautionary signs, and before the second turn (the right turn), three separate rectangular warning signs with right-hand arrows indicated the sharpness of that turn. The posted speed limit on Highway 219 is 45 miles per hour. As defendant was making the right turn, his car crossed the center line and collided with plaintiff's car.

The officer who took defendant's statement after the collision recorded that defendant

> "said that he was going up the hill at 45 to 50 mph as he entered the curve. He looked down to attend his radio and when he looked up he was heading over the center line. He tried to brake but slid across into the opposite lane."

At his deposition, defendant testified that he had traveled the same route between Hillsboro and Newberg approximately 20 times in the month preceding the collision. Defendant stated that he knew that the portion of the road where the collision occurred was twisty and curvy and that he was aware that slow moving farm vehicles, bicycles, pedestrians, and other passenger vehicles used the highway. Regarding the curve where the collision occurred, defendant did not recall the sharpness of the curve from his previous trips on Highway 219 nor did he recall the cautionary speed sign, although he did remember seeing the right-hand arrows indicating the sharpness of the curve.

Regarding the collision itself, defendant testified:

> "I was driving along and at the speed limit, and I looked down. I looked down for a second. I looked up and I realized the curve was coming up. I didn't feel it was a dire situation at all. I put the brakes on. I saw a curve develop. I was going in tangent with the curve and my brakes, and that's when I went across the line * * *."

---

90 degrees. Although the signs do not necessarily reflect the exact angle of the turn or curve, they generally reflect the alignment of the road and must "be based on an engineering study, or an engineering judgment." *Id.* at 2C-1. Specifically, the "reverse turn," rather than the "reverse curve," is to be used where the advisory speed for negotiating the turn is 30 miles per hour or less. *Id.* at 2C-8.

[2] Speeds posted on yellow cautionary signs are advisory, whereas speeds posted on white regulatory signs reflect the speed limit designated by law. *See Federal Manual* at 1A-12, 1A-14, 2A-7 (explaining sign meanings); OAR 734-020-005(1) (adopting federal guidelines for highway signs).

Plaintiff, who admits that he was driving uninsured at the time of the collision, brought this action seeking economic and noneconomic damages. As noted, defendant filed a motion for partial summary judgment, asserting that ORS 31.715 barred plaintiff from recovering noneconomic damages because plaintiff was driving while uninsured.[3] Plaintiff responded that he could recover noneconomic damages under the exception set out in ORS 31.715(5)(c), which allows a plaintiff to recover noneconomic damages if the defendant was driving recklessly. The trial court granted defendant's motion, holding that no reasonable juror could conclude that defendant's driving was reckless, and subsequently entered judgment for defendant.

The Court of Appeals affirmed in a divided en banc opinion. The majority began by describing the applicable statutory scheme. Under ORS 31.715(1), an uninsured motorist may not recover non-economic damages for injuries caused by another driver unless certain exceptions apply. One exception allows an uninsured plaintiff to recover non-economic damages if the defendant was driving in a way that constitutes a violation of ORS 811.140,[4] which prohibits reckless driving.[5] A defendant violates ORS 811.140 if he or she

---

[3] ORS 31.715 provides, in relevant part:

"(1) Except as provided in this section, a plaintiff may not recover non-economic damages, as defined in ORS 31.710, in any action for injury or death arising out of the operation of a motor vehicle if the plaintiff was in violation of ORS 806.010 [driving while uninsured] * * * at the time the act or omission causing the death or injury occurred. A claim for noneconomic damages shall not be considered by the jury if the jury determines that the limitation on liability established by this section applies to the claim for noneconomic damages.

"* * * * *

"(5) The limitation on liability established by this section does not apply if:
"* * * * *

"(c) The defendant was engaged in conduct that would constitute a violation of ORS 811.140 [defining reckless driving] at the time the act or omission causing the death or injury occurred[.]"

[4] ORS 811.140 provides, in relevant part:

"(1) A person commits the offense of reckless driving if the person recklessly drives a vehicle upon a highway or other premises described in this section in a manner that endangers the safety of persons or property.

"(2) The use of the term 'recklessly' in this section is as defined in ORS 161.085."

[5] ORS 31.715(5)(c) does not require that the defendant be charged with or convicted of reckless driving.

"recklessly drives a vehicle upon a highway * * * in a manner that endangers the safety of persons or property." The definition of "recklessly," for purposes of ORS 811.140, is taken from the criminal code and focuses on whether the person is "aware of and consciously disregards a substantial and unjustifiable risk." ORS 161.085(9).

The majority next observed that no appellate case had previously applied the "reckless driving" exception to the ban on the recovery of noneconomic damages in ORS 31.715. In the absence of directly relevant case law, the majority relied on cases evaluating claims brought under Oregon's now-defunct guest passenger statute, which barred a guest passenger's claim against the driver unless the driver's conduct constituted gross negligence. *See* ORS 30.115 (1977), *amended by* Or Laws 1979, ch 866, § 7. Gross negligence and recklessness were synonymous under the guest passenger statute. *Williamson v. McKenna*, 223 Or 366, 387-89, 354 P2d 56 (1960). Under the definition of "recklessly" enacted by the legislature in 1971 as part of a general revision of the criminal code—and used by ORS 811.140 as the mental state for reckless driving—recklessness requires a higher mental state than gross negligence did under the guest passenger statute. *See State v. Hill*, 298 Or 270, 279, 692 P2d 100 (1984) (so stating). To be "reckless," a defendant must be "aware of and consciously disregard[ ]" the applicable risk. ORS 161.085(9). The majority reasoned that if specific conduct did not rise to the level of gross negligence in the guest passenger cases, then similar conduct could not be reckless under the higher statutory standard. *Morehouse*, 235 Or App at 487.

The majority then examined two guest passenger cases where this court determined that the defendant's conduct did not rise to the level of gross negligence. In *Burghardt v. Olson*, 223 Or 155, 349 P2d 792, *adh'd to on recons*, 223 Or 198, 354 P2d 871 (1960), this court overturned a jury verdict for the plaintiff because evidence that the defendant exceeded the suggested speed limit by 20 miles per hour around a gentle curve that the defendant had driven several times before was not sufficient to prove gross negligence. *Id.* at 206-07. Similarly, in *Bland v. Williams*, 225 Or 193, 357 P2d 258 (1960), the defendant was speeding on a foggy night when he took his eyes off the road to adjust his radio. The

defendant drove off the road and crashed, and his passenger brought an action against him for damages. *Id.* at 195-96. The summary judgment record indicated that the defendant had caused the accident by adjusting his radio; no evidence suggested that either speed or fog played a role. Although the defendant was heedless of the risks of adjusting the radio while driving, the evidence was insufficient to prove gross negligence. *Id.* at 199.

Based on *Bland* and *Burghardt*, the majority in this case determined that defendant exhibited the same sort of heedlessness by taking his eyes off the road and exceeding the recommended speed coming into the turn. Specifically, the majority determined that *Bland* was directly on point because the primary cause of the accident in that case—the defendant taking his eyes off the road to adjust the radio—was the same conduct at issue in this case. Thus, if adjusting the radio could not prove gross negligence as a matter of law in *Bland*, then defendant's conduct could not prove recklessness, a higher standard, on the similar facts in this case. *Morehouse*, 235 Or App at 490. The majority concluded:

> "Defendant failed to drive with reasonable care by keeping his eyes on the road, which is to say defendant was negligent. Defendant's negligent driving, however, was not reckless driving."

*Id.*

The dissent argued that the question of recklessness should have gone to the jury, because defendant's knowledge of the road, his speed, and his decision to adjust the radio as he entered the curve could lead a reasonable juror to conclude that defendant was aware of, and consciously disregarded, the substantial and unjustifiable risk of crossing the center line and colliding with an oncoming vehicle. Further, the dissent asserted that *Bland* was distinguishable because nothing in the evidence in that case indicated that either the speed of the car or the foggy conditions contributed to the collision; rather, the defendant's adjusting of the radio was the only negligent act that caused the accident. *Morehouse*, 235 Or App at 491-92 (Rosenblum, J., dissenting). The dissent suggested that, in contrast here, defendant's speed directly contributed to the collision, as did defendant's decision to

adjust his radio while entering a sharp curve. Taking the facts—the sharpness of the turn, defendant's prior knowledge of the road, his speed, and his choice to adjust the radio—in the light most favorable to plaintiff, a reasonable juror could find defendant's behavior to be reckless. *Id.* at 492.

On review, plaintiff renews his argument that determining whether defendant was "reckless," as that term is defined in ORS 161.085(9), involves an inquiry into defendant's state of mind, and, on these facts, whether defendant was "aware of and consciously disregard[ed]" the risk of driving too fast into what he knew to be a sharp turn, while adjusting the radio, is a disputed material fact. Plaintiff also takes issue with the majority's use of cases decided under the guest passenger statute. In plaintiff's view, the majority should have emphasized the record in this case (and all reasonable inferences the jury could draw from that record) and applied the statutory recklessness standard to those facts, rather than comparing defendant's conduct to roughly similar facts in prior cases.

Defendant responds that his conduct was merely negligent under *Burghardt* and *Bland*. Even aside his reliance on those cases, defendant asserts that there is no evidence in the record from which the jury could infer that he was subjectively aware of and consciously disregarded the risk of endangering persons or property in the moments before the accident. Defendant testified that he did not remember the sharpness of the curve where the accident occurred, and he notes that plaintiff offered no evidence to contradict that testimony. Defendant also relies on the fact that the police officer who responded to the accident cited defendant for crossing the center line—a violation—rather than for reckless driving, a Class A misdemeanor. Thus, defendant asserts that he made only ordinary driving errors that resulted in foreseeable harm to plaintiff, *viz.*, that he was negligent. Even if the risk from his conduct was "substantial and unjustified," as required by ORS 161.085(9), defendant argues that the lack of evidence showing that he consciously disregarded that risk means that his conduct cannot, as a matter of law, be a "gross deviation from the

standard of care that a reasonable person would observe in the situation," as that statute also requires.

Because the parties and the Court of Appeals rely so heavily on the guest passenger cases, we begin with them. In both *Burghardt* and *Bland,* the evidence demonstrated that defendant's failure to exercise reasonable care had resulted in the collision, but in each case this court held that the plaintiff had failed to prove that gross, rather than ordinary, negligence caused plaintiff's injuries. In *Burghardt,* the defendant crashed after rounding a gentle curve—which was preceded by a cautionary sign showing a 45-degree curve and suggesting a speed of 45 miles per hour—at 20 miles per hour above the recommended speed. 223 Or at 189, 206-07. The defendant had driven the road where the accident occurred several times. *Id.* at 162. The plaintiff, however, presented no evidence that the defendant was distracted or that the curve in the road was sharp. *Id.* at 200, 206. Similarly, in *Bland,* the defendant looked down to adjust the radio and drove off the road. Although the night was foggy and the defendant was travelling at 60 miles per hour, the evidence did not suggest that the condition or direction of the road or any factor other than defendant's distraction caused defendant to leave the road, leading to the accident. 225 Or at 199. Similarly, defendant here argues that his distraction by adjusting the radio as he entered the curve was the primary cause of the accident and, because that conduct in *Bland* was held not to rise to the level of gross negligence, that conduct cannot constitute recklessness.

The summary judgment record here, however, contains evidence, not present in *Burghardt* or *Bland,* of defendant's mental state and of the dangers of the road on which he was driving that would permit a reasonable juror to find that defendant was aware of and consciously disregarded the substantial and unjustifiable risk that he might cross the center line and collide with another vehicle. Specifically, the record demonstrates that defendant was far more familiar with this stretch of road than the defendant in *Burghardt*; that the road itself contained sharp curves that defendant knew about, including the sharp turn where the collision occurred; that cautionary signs (a sign depicting a 90-degree left-hand turn followed by a 90-degree right-hand turn; a

sign showing a recommended speed of 25 miles per hour; and directional arrows) preceded the curve; that defendant drove into the sharp curve at 45-50 miles per hour; and that defendant then was looking away from the road to adjust the radio. Because there is substantially more evidence as to the sharp turn in the road itself and as to what defendant knew about the road and its hazards than in *Burghardt* and *Bland*, those cases are not sufficiently similar to this case to help determine whether a jury could find that defendant's driving was reckless under ORS 161.085(9), a statutory standard that did not exist when those cases were decided.

We therefore turn to that statutory standard. As noted, ORS 31.715(1) bars a plaintiff who was driving uninsured and was injured by another driver from recovering noneconomic damages from that driver. However, it creates an exception to that prohibition if the other driver "recklessly drives * * * in a manner that endangers the safety of persons or property." ORS 811.140. *See* ORS 31.715(5)(c) (creating exception to ORS 31.715(1) if defendant "was engaged in conduct that would constitute a violation of ORS 811.140 * * *"). That statute, in turn, adopts the definition of "recklessly" that is used in the criminal code:

> " 'Recklessly' * * * means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

ORS 161.085(9); *see* ORS 811.140(2) (cross-referencing definition of "recklessly"). Thus, the legislature, in determining a tort law policy—when an uninsured driver may, or may not, recover noneconomic damages from another driver—has directed us to use the mental state of "recklessly" that applies to criminal statutes using that term. In doing so, the legislature distinguished between circumstances where an uninsured plaintiff was injured by another driver's negligence—the driver's failure to exercise reasonable care in the circumstance—and those where the other driver's conduct met the more culpable mental state of "recklessness."

In applying that statutory standard to the facts here, we do so in light of the procedural posture of this case, namely, that we are reviewing the trial court's decision to grant defendant's motion for summary judgment. Summary judgment shall be granted if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." ORCP 47 C. No genuine issue of material fact exists if "no objectively reasonable juror could return a verdict for the adverse party * * *." *Id.*

Here, the parties do not disagree about the interpretation of any of the applicable statutes, nor is there any real dispute about the objective facts leading to the collision—defendant's familiarity with the road; the sharp turn in the road itself; defendant's speed; defendant's distraction by the radio; and the warning signs. Rather, the parties dispute the permissible inferences a reasonable juror could draw from those objective facts, and, specifically, whether the jury could find recklessness under ORS 161.085(9) by inferring that defendant was "aware of and consciously disregard[ed]" the risk presented by his driving and that the risk of endangering the safety of persons or property was "substantial and unjustifiable." For the reasons we discuss below, we conclude that the summary judgment record raises questions of material fact regarding those issues.

We first consider whether a jury could find that defendant was "aware of and consciously disregard[ed]" the risk posed by his conduct. *See* ORS 161.085(9) (stating standard). That element of recklessness is subjective and will rarely be susceptible to direct proof; it often must be inferred (or not) from objective facts. *See State v. Rose*, 311 Or 274, 282, 810 P2d 839 (1991) (mental state is "rarely, if ever, proven by direct evidence"). Defendant had travelled Highway 219 between Hillsboro and Newberg approximately 20 times in the preceding month. Defendant testified that he was aware that slow-moving vehicles, bicycles, pedestrians, and oncoming traffic could be present. He acknowledged that the road was twisty and curvy and remembered seeing the directional arrows preceding the turn. In response to defendant's motion for summary judgment, plaintiff submitted

photographs of the cautionary signs and of the curve where the accident occurred, as well as an aerial map of the location showing a series of twists and turns.

Despite defendant's testimony that he did not remember the sharpness of the particular curve where the accident occurred, a jury could find, based on defendant's familiarity with the road and the clearly visible "reverse turn" sign, advisory speed sign, and directional arrows, that defendant's testimony on that issue was not credible. A reasonable jury could instead infer that defendant was, in fact, aware of the sharpness of the turn and the attendant risk of endangering the safety of persons or property when driving at a speed far in excess of the advisory speed around that turn. Accordingly, the summary judgment record shows that a disputed issue of material fact exists regarding defendant's awareness of the risk. Similarly, a jury could find that defendant "consciously disregard[ed]" the risk posed by his conduct, as that phrase is used in the definition of "recklessly." Again, defendant argues that his testimony establishes that he did not disregard the risk of crossing the center line but simply miscalculated the speed at which the curve could be negotiated. Although a jury could reach that conclusion, in our view a reasonable jury also could find, based on defendant's knowledge of the road and the evidence of the cautionary signs and the physical features of the curve, that defendant's testimony on that issue was not credible and could infer that defendant consciously disregarded the risk of endangering persons or property by driving into the curve at 45-50 miles per hour and choosing to adjust his radio at that moment. Thus, the summary judgment record shows that a disputed issue of material fact exists regarding whether defendant consciously disregarded the risk.

The second aspect of the statutory definition of "recklessly" that we must consider is whether the risk that defendant may have been "aware of and consciously disregard[ed]" was a "substantial and unjustified risk" of endangering persons or property, and whether disregarding that risk would be a "gross deviation" from the standard of care that a reasonable person would observe in the circumstances. We note that a violation of the reckless driving statute does

*not* require that there be a substantial risk of the consequence that actually occurred as a result of defendant's conduct here—colliding with plaintiff. A person can, of course, be guilty of reckless driving even if there is no collision. As defined in ORS 161.085(9), " 'recklessly' means that a person 'is aware of and consciously disregards a substantial and unjustifiable risk' that a result described by a criminal statute will occur, or that a circumstance identified by a criminal statute exists." *State v. Crosby*, 342 Or 419, 429, 154 P3d 97 (2007) (emphasis added). The reckless driving statute, ORS 811.140, identifies the result or circumstance applicable here—"endanger[ing] the safety of persons or property"—as the risk created by defendant's driving in the manner that he did, and not necessarily the specific consequence of causing a collision.[6]

Defendant acknowledges that he was negligent: that his driving deviated from the standard of care applicable to drivers because he failed to drive in such a manner as to avoid reasonably foreseeable harm to plaintiff. Defendant, however, contends that his conduct was not a "gross deviation" from that standard, based on *Burghardt* and *Bland*. We reject that argument, for the reasons set out above. As noted, defendant also relies on the fact that the officer who responded to the accident did not cite defendant for reckless driving. That fact, however, is not dispositive: ORS 31.715(5)(c) requires that defendant's conduct "would constitute a violation" of the reckless driving statute; but it does not require that defendant actually be charged with or convicted of reckless driving for the exception to apply. For those reasons, we disagree with defendant that his conduct, as a matter of law, was only negligent. This court has repeatedly expressed its hesitance to turn "fact-specific decisions regarding negligence and foreseeability into rules of law," *Bailey v. Lewis Farm, Inc.*, 343 Or 276, 289, 171 P3d 336 (2007) (citing *Fazzolari v. Portland School Dist. No. 1J*, 303 Or 1, 16, 734 P2d 1326 (1987), and that caution is appropriate here as well.

---

[6] The reckless driving exception in ORS 31.715(5)(c) requires that defendant's reckless driving have "caus[ed]" the injury that the plaintiff sustained. That requirement, however, is distinct from the risk defined in the reckless driving statute, ORS 811.140.

Similar difficulties are involved in determining as a matter of law whether a risk of endangering persons or property is "substantial and unjustified," as required by ORS 161.085(9). Although a driver's *negligence* can endanger persons and property, and a person who drives in a manner that endangers (or would be likely to endanger) any person or property has committed the traffic violation of careless driving, ORS 811.135, the "recklessness" standard imposes a higher bar. To be "reckless," the driver's conduct must not only "endanger the safety of persons or property," *see* ORS 811.140(1) (defining crime of reckless driving), but the driver must also have been aware of and consciously disregarded "a substantial and unjustifiable risk" of doing so. Moreover, the next sentence of the statutory definition provides that "[t]he risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(9). Again, the explicit contrast between the standard of care that a "reasonable person" would exercise and the "gross deviation" from that standard that constitutes "recklessness" emphasizes the heightened standard that the legislature has established for a plaintiff to come within the exception in ORS 31.715(5)(c). Nevertheless, in our view, a reasonable juror could find that, where the road itself had sharp turns, with which defendant was very familiar, for defendant to enter a sharp turn while exceeding the advisory speed by 20-25 miles per hour and tuning the radio created a substantial and unjustifiable risk to the safety of persons or property and that disregarding that risk was a "gross deviation" from what a reasonable driver would do in the same situation. If a reasonable driver, knowing what defendant knew, would follow the cautionary signs and keep his eyes on the road while negotiating what the signs warned him was a sharp turn, then a jury could find that defendant's conduct sufficiently deviated from that standard so as to make the risk of harm to persons and property "substantial and unjustified."

Defendant may be correct that he did not drive recklessly, but only negligently. The jury is not required to draw the inferences that it is permitted to draw, and defendant may convince the jurors that he was not aware of and did not

"consciously disregard" the risks created by his conduct. Those arguments, however, are for the jury. The facts in this summary judgment record do not permit the court to decide those issues as a matter of law.

Defendant warns that if this summary judgment is not affirmed, then every allegation of recklessness in an uninsured driver case like this will create an issue of fact for the jury, thereby increasing the costs of litigation and settlement. Such a result, defendant argues, would frustrate the legislature's intent to deny uninsured motorists noneconomic damages. We disagree. Although dividing negligence from recklessness can be difficult in particular cases, the line does exist, and it sometimes can be drawn on a summary judgment record. ORCP 47, however, permits summary judgment only when there is no genuine dispute regarding an issue of material fact. On this record, a reasonable juror could find each element of reckless driving in plaintiff's favor. Thus, disputed issues of material fact exist, and summary judgment should not have been granted.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

**DE MUNIZ, C. J.,** concurring.

I concur in the court's opinion. I write separately, however, to emphasize that our holding is a narrow one; it does not, in my view, herald any sort of expansion in the area of criminal law.

In this case, the issue concerns defendant's mental state. Defendant contends that he was negligent, while plaintiff asserts that defendant was reckless. Those mental states represent two distinct states of mind. Negligence is the least demanding; it requires only that the defendant *should have* known about a risk.[1] Criminal negligence similarly considers

---

[1] *See, e.g., Stoeger v. Burlington Northern Railroad Co.*, 323 Or 569, 579-80, 919 P2d 39 (1996) (trial court should not have granted summary judgment for the defendant on a common-law negligence claim; the evidence created a genuine issue of material fact whether the defendant "knew or should have known" that a railroad switch was defective); *Moore v. Willis*, 307 Or 254, 258-61, 767 P2d 62 (1988) (to avoid judgment on the pleadings against a negligence claim, a plaintiff who asserts that "a risk was foreseeable, though not necessarily foreseen, * * * must

whether the defendant *should have* known about the risk, but it also requires that the risk be a "gross deviation from the standard of care that a reasonable person would observe in the situation." ORS 161.085(10).[2] Recklessness demands proof of a different and more culpable mental state. Although the nature of the risk is the same as for criminal negligence ("a gross deviation from the standard of care that a reasonable person would observe"), the standard is no longer what the defendant *should have* known; instead, a defendant must have been "aware of and consciously disregard[ed]" that risk. ORS 161.085(9).[3]

Although the mental state categories are seemingly well defined, they are not so in practice.[4] Both negligence and criminal negligence involve what a defendant knew or should

---

allege facts that would allow the factfinder to conclude that the defendant should have known of the risk").

[2] ORS 161.085(10) defines "criminal negligence" for purposes of the Oregon Criminal Code. It provides:

" 'Criminal negligence' or 'criminally negligent,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person fails to be aware of a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to be aware of it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

[3] ORS 161.085(9) defines "recklessly" for purposes of the Oregon Criminal Code:

" 'Recklessly,' when used with respect to a result or to a circumstance described by a statute defining an offense, means that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

[4] This court has previously noted this difficulty:

"[T]here is no magic verbal formula which will describe with precision the difference between negligence and reckless conduct. The concept of fault itself is difficult to explain. To draw a line between one type of fault and another and to describe the difference is even more difficult. In fact, it has been asserted that such a distinction cannot be drawn; that the effort to distinguish negligence and reckless conduct is futile because it is an attempt 'to separate two unknowns, neither of which is capable of being identified.' Burrell, *A New Approach to the Problem of Wilful and Wanton Misconduct*, 1949 Ins LJ 716, 717. But certainly there are differences in the gravity of fault and the fact that the difference cannot be precisely stated should not preclude us from administering a scheme of liability which is based upon the seriousness of the actor's misconduct."

*Williamson v. McKenna*, 223 Or 366, 394, 354 P2d 56 (1960).

have known, the only difference being whether the risk involved a "gross deviation from the standard of care that a reasonable person would observe in the situation"—a distinction that can be a jury question. Recklessness might seem to have a clearer boundary because it requires a subjective mental state ("aware of and consciously disregards a substantial and unjustifiable risk"). However, the line between that mental state and criminal negligence can be ephemeral in practice. Only rarely will a defendant admit to having consciously disregarded a risk of which he or she was aware. Absent that admission, a defendant's conscious disregard can only be determined by inference, in light of the nature of the act and the nature of the risk. When conscious disregard must be determined by inference, the line between what a defendant actually knew and what the defendant should have known can lose its clear boundaries. Again, it can be up to a jury to decide whether to draw that inference.

The absence of a clear dividing line between negligence, criminal negligence, and recklessness can create a danger, however. The absence of a clear dividing line could encourage the following overhasty generalization: If "gross deviation" is a jury question, and if "conscious disregard" is a jury question, then any negligent act automatically creates a jury question as to whether a defendant's conduct was reckless.

That danger is particularly important in this context, because recklessness and criminal negligence are mental states for the purpose of the Oregon Criminal Code. Both mental states are threaded throughout Oregon's criminal statutes. *See, e.g.*, ORS 163.005(1) (definition of criminal homicide includes the mental states "recklessly" and "criminal negligence"); ORS 163.118(1)(d) (first-degree manslaughter includes the mental states "recklessly" and "criminal negligence"); ORS 163.145(1) (criminally negligent homicide uses the mental state "criminal negligence"); ORS 163.149(1) (aggravated vehicular homicide uses the mental states "criminal negligence" and "recklessly"); ORS 164.325(1)(a)(B), (C) (first-degree arson includes the mental state "recklessly").

While juries must decide the mental state question on *some* fact patterns, that does not mean that *only* juries

may decide that question in *all* cases. Despite the difficulties, courts have an important responsibility to draw the necessary distinctions in appropriate cases. When it appears to a trial court on an appropriate motion that no rational juror could find that a defendant "consciously disregard[ed] a substantial and unjustifiable risk," or that the risk constituted "a gross deviation from the standard of care that a reasonable person would observe in the situation," then the trial court can and should exercise its authority to grant summary judgment in civil cases or a judgment of acquittal in criminal cases. *See* ORCP 47 C (in a civil case, the court should grant summary judgment if "no objectively reasonable juror could return a verdict for the adverse party"); *State v. Mejia*, 348 Or 1, 6, 227 P3d 1139 (2010) (on motion for judgment of acquittal in a criminal case, the question is "whether * * * any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (internal quotation marks and citation omitted)).

We have concluded that, on these facts, a jury question regarding recklessness has been presented for purposes of this civil case. The bench and bar should be wary of reading this opinion to say anything more than that.

I concur.