Submitted December 30, 2019, affirmed July 29, petition for review denied December 10, 2020 (367 Or 290)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## JOSEPH DANIEL BROWN,
*Defendant-Appellant.*

### Deschutes County Circuit Court
16CR35327; A168297

471 P3d 811

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII) and reckless driving. At trial, evidence was presented that defendant was driving between 15 and 18 miles per hour (MPH) in a 25 MPH zone when he took a sharp corner. In doing so, defendant turned into the lane for oncoming traffic and grazed or nearly hit the curb before correcting course. The arresting officer administered a breath test, which indicated a blood alcohol content of .19 percent. However, there was no evidence of oncoming vehicle or pedestrian traffic. Defendant moved for a judgment of acquittal on the reckless driving charge, which the court denied. On appeal, defendant assigns error to that denial, arguing that no reasonable trier of fact could find that he drove "in a manner that endangers the safety of persons or property" because the only evidence to support that contention is that he was driving 8 to 10 MPH under the speed limit and that he took a sharp corner. Alternatively, defendant argues that the crime of reckless driving can only be proven if there was evidence that his car hit or came close to hitting an identified person or object. *Held*: The trial court did not err in denying defendant's motion for a judgment of acquittal, because to survive that motion it is sufficient that a reasonable trier of fact can infer that there was a substantial risk of endangering persons or property. Here, in an area frequented by people, defendant nearly hit the curb on the wrong side of the intersection, drove a substantial distance in that lane, and was highly intoxicated.

Affirmed.

Wells B. Ashby, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Nora Coon, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Aoyagi, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Affirmed.

Aoyagi, J., dissenting.

**KISTLER, S. J.**

Defendant appeals a judgment of conviction for driving under the influence of intoxicants (DUII) and reckless driving. He argues that the trial court erred in denying his motion for a judgment of acquittal on the reckless driving charge. We affirm.

On Friday, June 10, 2016, at approximately 10:20 p.m., an officer noticed defendant driving 15 to 18 miles per hour on Glacier Avenue—a main, one-way street that runs through Redmond, Oregon. A map of the area introduced as state's Exhibit 1 shows that Glacier and Highland Avenues form a couplet that serves as Highway 126 through Redmond. The map also shows that the area between Glacier and Highland Avenues where the officer first noticed defendant includes a mix of restaurants and businesses.[1] That area is "pretty close to downtown" and has a posted speed limit of 25 miles per hour, a speed limit that results, in part, from the fact that "there's a lot of activity in the area like businesses and pedestrians."

The officer followed defendant for approximately two blocks on Glacier Avenue before defendant turned left onto 12th Street, a smaller, two-way street, that connects Glacier and Highland Avenues. When defendant turned onto 12th Street, he "took a sharp corner[,] which basically caused him to [turn] into [the lane for oncoming traffic] and [he] had to travel through [that] lane to get to his, the correct lane."[2]

On cross-examination, the officer illustrated defendant's route by drawing a line on a photograph of the intersection of Glacier Avenue and 12th Street, which was admitted as defendant's Exhibit 101. The line that the officer drew shows that, when defendant turned onto 12th Street, his car grazed or came close to hitting the curb on the left (or wrong) side of the intersection, that he continued by driving

---

[1] The map was admitted as state's Exhibit 1 and includes the names of some of the businesses in the area where defendant was driving. The restaurants in the area include Round Table Pizza, La Posada Mexican Grill, Papa Murphy's Take 'N' Bake Pizza, and Loco Place, which is described on the map as "Crazy Snacks Crazy Good Food."

[2] No line demarcates the two lanes on 12th Street.

in the left lane (the lane for oncoming traffic) to and through the crosswalk, and that he drove substantially beyond the crosswalk in the wrong lane before correcting course and moving into the right lane on 12th Street.[3] There is no evidence that defendant's driving resulted in an actual injury to person or property.

Having corrected course, defendant drove briefly on 12th Street toward Highland Avenue before turning into a convenience store parking lot, driving through that parking lot, and parking his car in front of a closed real estate office. At no point did the officer signal defendant to stop. Rather, the officer followed defendant's car into the real estate parking lot, parked near defendant's car, and stepped out of his car. As the officer approached defendant's car, he noticed that defendant was "using the frame of the door to pull himself out of the vehicle." Once defendant got out of the car, the officer observed that defendant had "poor balance," his eyes were "bloodshot and watery," and an odor of alcoholic beverage was on his breath.

The officer administered three field sobriety tests, all of which indicated that defendant was under the influence of intoxicants. Afterwards, defendant acknowledged that he had drunk eight beers since five o'clock that evening. The officer placed defendant under arrest and took him to the police station where he administered a breath test. The breath test disclosed that defendant had a blood alcohol content (BAC) of .19 percent or almost two-and-a-half times the legal limit of .08 percent. The state also submitted documentary evidence on the reckless driving charge. That evidence showed that defendant had participated in a diversion program in 2007 for what defendant had described as "drunk driving" and that, after completing diversion, defendant

---

[3] Defendant's Exhibit 101 shows that the crosswalk on 12th Street is not flush with Glacier Avenue but is set back several feet from it. The exhibit shows that defendant drove in the left or wrong lane on 12th Street from the intersection to the crosswalk (a distance of approximately the one-half the width of the crosswalk), that he continued through the crosswalk in the wrong lane, and that he continued farther in the wrong lane for a distance roughly equal to the width of the crosswalk before correcting course and moving into the right or correct lane. The officer explained that the line he drew estimated the path of defendant's turn and added, after marking the exhibit, "[t]here, something like that not to scale."

had been convicted of DUII in 2013 before the current DUII charge in 2016.[4]

At the close of the evidence on the reckless driving charge, defendant moved for a judgment of acquittal on that charge. He acknowledged that there may be "some evidence of a reckless mental state." He contended, however, that

> "in no way has the State put on evidence as to the other portion of that statute, a manner of driving that endangers the safety of persons or property. There's no evidence of any kind of oncoming traffic in any way, no evidence of any kind of pedestrians."

The state responded that defendant was driving in a busy part of downtown Redmond and that, under established caselaw, the state did not have to prove an actual hit or even a near miss to show that the manner of defendant's driving endangered the safety of persons or property. After considering the parties' arguments, the trial court denied defendant's motion for a judgment of acquittal on the reckless driving charge and later found him guilty of that charge.[5]

On appeal, defendant assigns error to the trial court's ruling denying his motion for a judgment of acquittal on the reckless driving charge. The reckless driving statute provides: "A person commits the offense of reckless driving if the person recklessly drives a vehicle upon a highway *** in a manner that endangers the safety of persons or property." ORS 811.140(1). That statute requires proof of both a mental state (recklessly) and an act (driving on a highway "in a manner that endangers the safety of persons or property"). *See* ORS 811.140(2) (providing that ORS 161.085 defines the mental state "recklessly," as that term is used in ORS 811.140(1)).[6]

---

[4] The current DUII charge was tried to a jury while the reckless driving charge was tried to the court. In deciding whether defendant was guilty of the current 2016 DUII charge, the jury did not hear evidence of defendant's 2007 diversion or his 2013 DUII conviction. In deciding whether defendant was guilty of reckless driving, the trial court considered both the evidence that the jury had heard on the current DUII charge and the documentary evidence regarding defendant's 2007 diversion and 2013 DUII conviction.

[5] The jury separately convicted defendant of DUII. Defendant raises no challenge to that conviction.

[6] ORS 161.085(9) provides: "'Recklessly,' when used with respect to a result or circumstance described by a statute defining an offense, means that a person

On appeal, defendant acknowledges, as he did below, that there was evidence from which a reasonable trier of fact could find that he acted "recklessly." He argues, however, that no reasonable trier of fact could find that he drove "in a manner that endangers the safety of persons or property." As we understand defendant's primary argument, it is factual. He starts from the proposition that the fact that he drove while intoxicated is not sufficient, standing alone, to establish that he drove in an unsafe manner. He then argues that the only deficiencies in his driving that the officer noticed—driving slowly and "taking a sharp corner"—are not sufficient, as a matter of law, to prove that he was driving in a manner that endangered the safety of persons or property. He also suggests alternatively that the state could prove the crime of reckless driving only if there was evidence that his car hit or came close to hitting an identified person or object.

We begin with defendant's primary argument. We agree with defendant that the fact that he was driving while intoxicated does not automatically establish that he was guilty of reckless driving. *See State v. Luke*, 104 Or App 541, 546, 802 P2d 672 (1990) (holding that a jury instruction erroneously permitted the jury to conclude that a finding of guilt on a DUII charge automatically established the defendant's guilt on a related charge of reckless driving). Something more is required. *See State v. Smith*, 218 Or App 568, 572-73, 180 P3d 148 (2008) (holding that the level of the defendant's intoxication and the circumstances under which she drove were sufficient to meet the state's burden of production). Similarly, the fact that a driver violates a traffic law does not necessarily mean that the driver is guilty of reckless driving. *Morehouse v. Haynes*, 350 Or 318, 330, 253 P3d 1068 (2011).[7]

is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists."

[7] As the court explained in *Morehouse*, to find a defendant guilty of reckless driving, a trier of fact must conclude not only that the defendant violated the standard of care ordinarily applicable to drivers. It also must find that the risk of harm posed by the defendant's conduct was "substantial and unjustified" and that the defendant was "aware of and consciously disregarded" that risk of harm. 350 Or at 331. It follows that only a subset of traffic violations will constitute reckless driving. *See id.* at 332-35 (De Muniz, C. J., concurring) (so noting).

We disagree with defendant, however, that the only deficiencies in his driving were driving slowly and simply "taking a sharp corner." Rather, the trier of fact reasonably could find that, when defendant turned onto 12th Street, he either grazed or barely missed hitting the curb on the left (or wrong side) of the intersection, he turned directly into the lane for oncoming traffic on 12th Street, and he continued in that lane to, through, and beyond the crosswalk. Driving a substantial distance in the lane for oncoming traffic presents a far greater danger to persons and property than merely taking a "sharp corner," or so the trial court reasonably could find.

Moreover, a trier of fact reasonably could infer that the level of defendant's intoxication (almost two-and-half times the legal limit) exacerbated the dangerous manner in which he drove. That is, a trier of fact reasonably could infer that defendant's heightened level of intoxication caused him to be unaware that he was turning from a one-way street onto a two-way street with the result that he drove a substantial distance in the lane for oncoming traffic. Put differently, a trier of fact reasonably could find that defendant was no clear-eyed driver who could assess the risks posed by his conduct. Additionally, a trier of fact reasonably could infer that defendant's observed lack of coordination resulting from his intoxication impaired his ability to correct his error once he became aware of it, as well as his ability to avoid harming others who might find themselves in his path. Put simply, a reasonable trier of fact could find that the manner in which defendant drove endangered the safety of persons or property.

Our decision in *Smith* supports that conclusion. In *Smith*, there was no direct evidence of the manner in which the defendant drove. 218 Or App at 570-71. No one saw the defendant driving in *Smith*; they found her standing beside her car parked on "the Alberta Street on-ramp to Interstate 5 North in Portland, during rush-hour traffic." *Id*. at 570. Her parked car was "partially obstructing traffic" and she was standing outside her car in a way that impeded traffic. *Id*. She also was clearly intoxicated. *Id*. When she returned to her car at the officer's request, she slumped into her seat, responded to the officer's questions in a semi-coherent

fashion, and later fell asleep when the officer briefly walked away. *Id.* A breath test revealed that she had a BAC of .36 percent. *Id.* at 571.

The defendant in *Smith* argued, as defendant does here, that there was no evidence from which a trier of fact reasonably could infer that she had driven "in a manner that endangers the safety of persons or property." In *Smith*, no one had seen the defendant drive, and she reasoned that "proof that she was intoxicated simply is not sufficient by itself to establish anything about the manner in which she was actually driving at the time." *Id.* We disagreed, reasoning that the extent of her intoxication, the fact that she had parked her car on the on-ramp and then stood outside her car impeding traffic, and that she had been driving in rush hour while severely intoxicated permitted the trial court reasonably to infer that she had been driving in a manner that endangered the safety of persons or property. *Id.* at 572-73.[8]

In this case, as in *Smith*, defendant's level of intoxication was quite high, although not as high as the defendant's in *Smith*. Unlike *Smith*, however, there was direct evidence in this case of the manner in which defendant had been driving. As discussed above, given the exhibit illustrating defendant's line of travel, a reasonable trier of fact could infer that, when defendant turned onto 12th Street, he grazed or nearly hit the curb on the left (or wrong) side of the intersection, he turned directly into the lane for oncoming traffic, and drove a substantial distance in that lane—a manner of driving that posed a substantial and unjustified risk to other persons and property. Moreover, as in *Smith*, the trier of fact reasonably could infer from defendant's high level of intoxication and his lack of coordination on getting out of his car, that his intoxication exacerbated the dangers posed by his manner of driving. Specifically, a reasonable

---

[8] The charge of reckless driving turns on the manner in which a person *drives* his or her car. It follows that where the defendant in *Smith* parked her car and how she stood once she stepped out of her car (and the resulting danger *those* acts posed to other motorists) were relevant primarily to the extent that they permitted a reasonable inference that she previously had driven in a similar manner—namely, with a similar indifference to the safety of other drivers. 218 Or App at 572-73.

trier of fact could infer that defendant lacked the awareness and physical skills to perceive and avoid harming others. In short, we disagree with the factual premise of defendant's argument that his manner of driving did not pose a substantial risk of harm to persons or property.

Defendant appears to advance an alternative argument. He suggests that he can be found guilty of reckless driving only if there is evidence that he either hit or barely missed an identified person or object. On that issue, the reckless driving statute prohibits driving "in a manner that endangers the safety of persons or property." ORS 811.140(1). The text of the statute focuses on the "manner" in which a person drives, not on the consequences of the person's driving. *See Morehouse*, 350 Or at 330 (stating that proposition). To be sure, a person must drive in a manner "that endangers the safety of persons or property." However, as the use of the word "endanger" suggests, the manner in which a person drives need only pose a risk of harm. *See Webster's Third New Int'l Dictionary* 748 (unabridged ed 2002) (defining the term "endanger" as meaning "to bring into danger or peril of probable harm or loss"). Beyond that, the text does not require proof that a person's driving endangered an identified person or object. Rather, it refers more generally to endangering "persons or property."

The cases interpreting the reckless driving statute shed additional light on the issue. In *Morehouse*, the Supreme Court clarified the degree of risk that the state must prove to establish that a defendant's manner of driving endangers the safety of persons or property. 350 Or at 329. Looking to the definition of "recklessly," the court explained that the state must prove that a person was aware that his or her manner of driving posed a "'substantial and unjustified risk' of endangering persons or property."[9] *Id*. At the

---

[9] At first blush, it might seem unusual to look to the definition of "recklessly" to determine the extent to which the manner of a defendant's driving "endangered" the safety of persons or property. However, the court explained that, as used in the reckless driving statute, the definition of "recklessly" specifies that (1) a person must be aware of and consciously disregard (2) a substantial and unjustified risk that the person's manner of driving endangered the safety of persons or property. *Morehouse*, 350 Or at 330. As *Morehouse* suggests, the second part of the definition of "recklessly" identifies the degree of risk required to establish that the manner in which a person drove endangered the safety of persons or

same time, the court was careful to make clear that "a violation of the reckless driving statute does *not* require that there be a substantial risk of the consequence that actually occurred as a result of [the] defendant's conduct." *Id.* at 329-30 (emphasis in original). As the court explained, the relevant risk of harm for the purposes of the reckless driving statute is "'endanger[ing] the safety of persons or property' *** [by] driving in the manner that [the defendant] did, and not necessarily the specific consequence" of the manner in which the defendant drove. *Id.* at 330.

In that respect, *Morehouse* is consistent with our decision in *Smith*, where we upheld the defendant's conviction even though there was no direct evidence that the defendant had actually hit or nearly missed an identified person or object. It was sufficient, we concluded, that the trial court could infer that the manner of the defendant's driving created a substantial risk of endangering persons or property. *See Smith*, 218 Or App at 572 (citing *State v. Mojarro-Sandoval*, 208 Or App 178, 180, 144 P3d 996, *rev den*, 342 Or 117 (2006)). In this case, as in *Smith*, there is no direct evidence whether other persons were driving or walking in the area near Glacier Avenue and 12th Street. However, the trial court reasonably could infer that defendant was driving in a commercial area close to downtown that had low posted speeds to protect pedestrians and others frequenting the businesses in the area. The court also could infer that, while some of the businesses identified on state's Exhibit 1 would be closed at 10:30 p.m. on a Friday evening in June, people would be frequenting the restaurants on Highland Avenue—the street towards which defendant was headed when he turned left onto 12th Street.[10] Put differently, the trial court reasonably could infer that defendant's manner of driving posed a substantial and unjustified risk to the vehicles and pedestrians frequenting the restaurants open on a Friday evening in June, as well as the adjacent property when defendant almost ran off the road at the corner of Glacier Avenue and 12th Street. On this record, the trial

property. *See id.* at 331 (distinguishing the likelihood of risk necessary to prove reckless driving from that required to prove careless driving).

[10] When defendant turned onto 12th Street from Glacier Avenue, he was headed towards Highland Avenue, only a block away.

court correctly denied defendant's motion for a judgment of acquittal on the reckless driving charge.

Affirmed.

**AOYAGI, J.,** dissenting.

I generally agree with the majority's legal analysis, including recognizing that some traffic violations that would not otherwise constitute reckless driving may rise to the level of reckless driving when committed by an extremely intoxicated driver like defendant. I disagree only with the application of the law to the facts of this particular case. As such, I respectfully dissent.

Around 10:20 p.m. on a Friday night in Redmond, defendant was driving down a one-way street at a lawful rate of speed—15 to 18 miles per hour, where the maximum speed limit was 25 miles per hour—when he cut a corner while turning left onto a two-way side street. As described by the police officer who saw it, defendant "cut this corner short, took a sharp corner." The record contains a photograph of the intersection, marked with a black pen by the officer at trial to show the path of defendant's vehicle:



I fully agree with the majority that a person may drive "in a manner that endangers the safety of persons or property," ORS 811.140(1), even if no person is injured and no property is damaged. That is, it is absolutely correct that the statute pertains to the *risk* created by the manner of driving, not the realized consequences. But risks cannot be assessed in a vacuum—they require consideration of the actual circumstances in which conduct occurs. To put it in extreme terms, driving (including the commission of traffic violations) that might recklessly endanger persons or property if performed on a major highway during rush hour, in a school zone with children present, or in a crowded pedestrian area might not recklessly endanger persons or property if performed in a vacant parking lot or on a deserted road in the middle of the night. Of course, this case falls somewhere between those extremes—defendant was turning onto a side street near the downtown of a small city around 10:20 p.m. on a Friday night—but the point is that the actual circumstances matter to whether a person's driving is reckless.[1]

That point is even more stark with respect to pedestrians in crosswalks. Driving through a crosswalk might be reckless if someone is entering or in the crosswalk, but it is entirely ordinary when that is not the case. Indeed, one must drive through crosswalks regularly to get anywhere. If it is readily apparent that no one is entering or in a crosswalk, how can driving through the crosswalk nonetheless be deemed reckless on the basis that it endangers a theoretical nonexistent pedestrian? If we create a legal fiction in which all crosswalks are filled with theoretical pedestrians, then virtually *all* driving is reckless. But we do not normally create such a legal fiction. If defendant had made a perfect

---

[1] In the analogous context of the crime of reckless endangerment, ORS 163.195(1), compare *State v. Harbert*, 155 Or App 137, 963 P2d 710, *rev den*, 327 Or 554 (1998) (recognizing that "ORS 163.195(1) was intended to cover potential risks as well as cases where a specific person is within the zone of danger," and affirming the defendant's conviction for reckless endangerment, where he shot a gun 15 times at the ceiling and front door of his lower-floor duplex in Portland at 10 p.m. on a Friday night without knowing whether anyone was upstairs or outside (internal quotation marks omitted)); with *State v. Wakefield*, 292 Or App 694, 425 P3d 491 (2018) (distinguishing *Harbert*, and reversing conviction for reckless endangerment, where the defendant shot a slingshot at a bus shelter when it was vacant and no one was in the immediate vicinity, such that no one was in the "zone of danger" and there was no real likelihood of anyone being hit).

90-degree left turn while no one was in the crosswalk, we could not (and would not) say that he recklessly endangered theoretical pedestrians. I see no reason for a different result because he cut the corner and therefore drove through a different section of the empty crosswalk.

The essential point is that the creation of risk must be assessed based on the defendant's actual circumstances objectively considered (including the recognition of unknowns), not hypothetical circumstances that affirmatively did not exist. In this case, if another vehicle had been coming down the side street onto which defendant turned, or if a pedestrian had been in or near the crosswalk, *or if the corner had been blind or otherwise laid out such that defendant could not see whether another driver or pedestrian was present,* then I would readily conclude that the evidence was sufficient to convict defendant of reckless driving for cutting the corner—regardless of whether defendant actually hit anyone.[2] However, that is not the case. There is no evidence of an oncoming vehicle, a nearby pedestrian, or any inability to see such a vehicle or pedestrian. Cutting a corner may recklessly endanger persons or property if other persons *are* present or *could be* present, but I do not see how cutting a corner constitutes reckless endangerment when it is visibly apparent that no one is present.

In sum, defendant cut a corner at a slow speed while turning left from the far-left lane of a one-way street onto a side street near the downtown core of a small city around 10:20 p.m. on a Friday night. There is no evidence that anyone was on the side street or in the crosswalk or that the street layout prevented defendant from seeing whether someone was on the street or in the crosswalk. Given his rate of speed and the short distance that he travelled,[3] defendant

---

[2] *Cf. Morehouse v. Haynes*, 350 Or 318, 328-29, 253 P3d 1068 (2011) (holding that a dispute of material fact existed as to whether the plaintiff had driven recklessly, for purposes of a civil claim, where he crossed over a road's center line while driving 45 to 50 miles per hour on a curve with a suggested speed of 25 miles per hour and chose that moment to adjust his radio, given defendant's familiarity with the road and "the cautionary signs and the physical features of the curve").

[3] I disagree with the majority's characterization of defendant as having traveled a "substantial distance" in the wrong lane. 305 Or App at 650, 651. As the officer testified, defendant cut a sharp corner. The distance he traveled was the

would have been out of his lane for no more than a second or two. Although defendant's drunkenness is certainly relevant, it is not, in my view, enough to transform this particular traffic violation into reckless driving. Defendant was appropriately convicted of driving under the influence of intoxicants, and he presumably could have been cited for a traffic violation for his sharp turn, but the evidence was insufficient to convict him of the crime of reckless driving. Accordingly, I would reverse the reckless driving conviction and, respectfully, dissent.

---

distance inherent in cutting a sharp corner, as is apparent from the photo on which the officer drew defendant's path of travel.